MELVIN L. LIBMAN AND HILDA G. LIBMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Libman v. Commissioner
Docket No. 1165-79
United States Tax Court
T.C. Memo 1982-377; 1982 Tax Ct. Memo LEXIS 362; 44 T.C.M. (CCH) 370; T.C.M. (RIA) 82377; July 7, 1982. *363 Melvin L. Libman, pro se. Frank W. Louis, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in petitioners' 1976 Federal income tax of $2,202.95. The issue for decision is whether petitioners are entitled to exclude from gross income certain amounts of petitioner Melvin L. Libman's compensation from the United Jewish Appeal as a rental allowance under section 107. [1]
FINDINGS OF FACT Petitioners were residents of New Haven, Connecticut at the time the petition in this case was filed. Petitioner Melvin L. Libman (hereafter petitioner), an ordained rabbi, was hired by the United Jewish Appeal (UJA) in the summer of 1975 to serve as its Director of the Rabbinic Advisory Council. The placement bureau of the Rabbinical Assembly, an organization of conservative rabbis, assisted petitioner in securing this position. A letter to petitioner from Rabbi Kelman of the Rabbinic Assembly, states: I am pleased to inform you that the Placement Commission of the Rabbinical Assembly *364 has assigned you as our representative to the post of Director of the Rabbinical Advisory Council of the United Jewish Appeal. We are particularly pleased at this time that one of our own Conservative rabbis has been selected to this important position which can be filled only by a rabbi. Petitioner was employed by the UJA during 1976. Prior to his employment with the UJA, petitioner served as a rabbi of various congregations, and was provided housing by these congregations. While serving the UJA, petitioner continued to live in the same house he lived in when serving his last congregation, which was within a block of the synagogue. The UJA is a charitable organization with primary emphasis on raising funds to support various social causes and Jewish institutions around the world. Petitioner's position with the UJA has traditionally been held by an ordained rabbi. The services petitioner performed with the UJA were in substantial part rabbinic in nature. Petitioner served as a consultant to the UJA and its staff regarding matters of Jewish law and practices. Petitioner functioned as staff chaplain providing rabbinic counseling to staff and conducting services at meetings. *365 He performed sacerdotal functions, conducting weddings and funerals for the staff and families. He directed religious services and observances at all UJA conferences and meetings and conducted study sessions on Jewish customs and practices for the executive staff of the UJA. Petitioner communicated to rabbis around the world regarding the importance of the concept of charity and enlisted their support for programs sponsored by the UJA. In this respect, he conducted seminars for various rabbinic groups and delivered Sabbath sermons to various congregations. On August 22, 1975, shortly after petitioner was hired by the UJA, he wrote a letter to Marc Tabatchnik, a UJA official, requesting that the UJA arrange his salary schedule to include an $8,400 housing allowance. Petitioner noted in the letter that his predecessor as Director of the Rabbinical Advisory Council had a similar arrangement. The UJA orally granted petitioner's request at that time. By letter dated October 2, 1979, Irving Bernstein, Executive Vice-President of the UJA, confirmed that the UJA had in fact granted such request. The UJA generally handles its relationships with its employees on an informal basis. *366 Petitioner had no written employment contract with the UJA nor any specific job description. The UJA generally does not execute written employment contracts with its employees. Petitioners excluded from their 1976 gross income a housing allowance of $8,016 which was disallowed by the respondent in his notice of deficiency. OPINION The issue is whether petitioner is entitled under section 107 to exclude from his gross income a ministerial rental allowance for 1976. Respondent disallowed the claimed exclusion in its entirety. Section 107[2] allows a minister of the gospel to exclude from gross income a rental allowance paid to him as part of his compensation to the extent that allowance is used by him to rent or provide a home. To qualify for this exclusion, respondent's regulations require that (1) the allowance must be provided as remuneration for services which are ordinarily the duties of a minister of the gospel ( section 1.107-1(a), Income Tax Regs.); and (2) that prior to payment of this rental allowance, the employing church or other qualified *367 organization must, by official action, designate such amount as rental allowance ( section 1.107-1(b), Income Tax Regs.). First we will consider whether petitioner received a rental allowance as remuneration for services which are "ordinarily the duties of a minister." The regulations provide that "[i]n general, the rules provided in section 1.1402(c)-5 will be applicable to such determination." Section 1.107-1(a), Income Tax Regs. Section 1.1402(c)-5(b)(2) provides generally that the "service performed by a minister in the exercise of his ministry includes the ministration of sacerdotal functions and the conduct of *368 religious worship, and the control, conduct, and maintenance of religious organizations (including the religious boards, societies, and other integral agencies of such organizations), under the authority of a religious body constituting a church or church denomination." That the UJA, petitioner's employer, is in essence a charitable rather than a religious organization is not critical to the determination herein since the regulations provide further that "[i]f a minister is performing service in the conduct of religious worship or the ministration of sacerdotal functions, such service is in the exercise of his ministry whether or not it is performed for a religious organization." Section 1.1402(c)-5(b)(2)(iii), Income Tax Regs.[3]
*369 In the instant case, petitioner's functions as Director of the UJA Rabbinic Advisory Council were clearly "in the exercise of his ministry." Prior to his appointment to his position with the UJA, petitioner, an ordained rabbi, served as a rabbi of various congregations. With the assistance of the placement bureau of the Rabbinical Assembly, an organization of conservative rabbis, petitioner in 1975 secured a post with the UJA that traditionally has been held by an ordained rabbi. The services petitioner performed with the UJA, though different than that of a rabbi of a specific congregation, were clearly rabbinic or "ministerial" in nature. Petitioner's duties with the UJA were twofold. First, he communicated to rabbis around the world regarding the importance of the concept of charity and enlisted their support for UJA programs. In this respect, he conducted seminars for rabbinic groups and delivered Sabbath sermons to various congregations to discuss and convey religious principles which impinge upon the work of the UJA. Second, and of greater importance for purposes of this case, petitioner performed many religious or sacerdotal functions similar to those performed by a *370 rabbi with a defined congregation (or under the statutory terminology--a "minister of the gospel"). Petitioner served as staff chaplain to the UJA and its staff, explaining matters of Jewish law and practices and conducting weddings and funerals for the staff and families upon their request. In addition, he directed religious services and observances at all conferences and meetings and conducted study sessions on Jewich customs and practices for the executive staff of the UJA. [4] Thus, based on the entire record, we are convinced that the services petitioner performed for the UJA were "in the exercise of his ministry" within the meaning of the regulations. n4a *371 Next, we must consider whether petitioner has met the second requirement of regulations section 1.107-1, that the employing organization must, prior to the payment, officially designate an amount paid as rental allowance. Respondent argues that petitioner is not entitled to the rental allowance because no such designation in advance of payment was made. We disagree. On August 22, 1975, about the time petitioner was hired by the UJA, petitioner wrote a letter to Marc Tabatchnik, a UJA official, requesting that the UJA arrange his salary schedule to include a $8,400 housing allowance, and noting that petitioner's predecessor as Director of the Rabbinical Advisory Council had a similar arrangement. Petitioner testified that shortly thereafter, the UJA orally granted his request. Petitioner had no written employment contract with the UJA nor any specific job description. In fact, petitioner noted at trial that the UJA did most things "by oral agreement--with a handshake" and that the UJA generally does not execute written employment contracts with its employees. We found petitioner to *372 be a man of the highest integrity, a forthright and compelling witness, and we believe his testimony. Additionally, there is evidence in the record corroborating petitioner's account of the important events. On October 2, 1979, after the Internal Revenue Service commenced auditing petitioner's 1976 tax return, Irving Bernstein, Executive Vice-President of the UJA, wrote a letter confirming that in 1975 the UJA orally granted petitioner's request regarding the rental exclusion. Although this letter does not constitute advance designation under the regulations, it indicates along with petitioner's own testimony, that the UJA did in fact designate part of petitioner's salary as rental allowance. Respondent, however, argues that such informal communications between petitioner and the UJA does not constitute "official" designation within the meaning of regulations section 1.107-1(b). We disagree. The regulation requires only that the designation be made "pursuant to official action taken in advance of such payment." ( Section 1.107-1(b), Income Tax Regs.). While *373 the regulation states that "[t]he designation of an amount as rental allowance may be evidenced in an employment contract * * * or in any other appropriate instrument evidencing such official action" (emphasis supplied), there is no requirement that the designation be in writing. Rather, the requirement is satisfied upon satisfactory proof of official action. In the instant case, the UJA's verbal agreement to a specific designation requested by petitioner is sufficient evidence of official action. Respondent cites the case of Eden v. Commissioner,41 T.C. 605 (1964) for the proposition that informal discussions of the rental allowance do not amount to an official designation. Eden is clearly distinguishable since in that case there was testimony by both the petitioner and a representative of the church where petitioner served as minister of education and music that no official designation of part of his salary as a rental allowance was made during the year in issue. In the present case, however, the evidence is clear that part of petitioner's salary was designated as a rental allowance. While it may be that a written instrument is preferable and *374 in most instances would be required, we deal here with unusual facts, for it is clear that the UJA dealt on an informal basis with its employees. It did so with petitioner with regard to the rental allowance as it did with the Rabbis who preceded petitioner in his position. And it is clear from petitioner's testimony, as corroborated by the documentary evidence before us, that an official designation was made. On the particular facts and circumstances before us, the requirement of the regulation has been satisfied. [5]
*375 We thus hold that petitioner was entitled to the claimed housing allowance for 1976. Decision will be entered for the petitioner.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. SEC. 107. RENTAL VALUE OF PARSONAGES. In the case of a minister of the gospel, gross income does not include-- (1) the rental value of a home furnished to him as part of his compensation; or (2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home.↩
3. The regulation also points out that service may be in "the exercise of his ministry" if it is performed for a nonreligious organization "pursuant to an assignment or designation by a religious body constituting his church." Sec. 1.1402(c)-5(b)(2)(v), Income Tax Regs. However, since the Jewish faith does not have a hierarchal order and consequently does not assign rabbis to occupy positions such as this (although rabbinic organizations may assist in placement), under a strict reading of this regulation it is difficult for petitioner or someone similarly situated to pass this test. See Tanenbaum v. Commissioner,58 T.C. 1, 8↩ (1972).
4. Colbert v. Commissioner,61 T.C. 449 (1974), is clearly distinguishable. In Colbert, a Baptist minister preached anticommunism for the Christian Crusade. His job did not involve the performance of sacerdotal functions or the conduct of religious worship, and he was not functioning as staff chaplain. He was not teaching church doctrine or interpreting religious law. Finally, his job was not required to be filled by an ordained clergyman. n4a While respondent contended both in his trial memorandum and in his opening statement and throughout the trial that petitioner was not a "minister of the gospel" within the meaning of sec. 107, respondent did not raise the issue in his deficiency notice and failed to address this issue on brief. Petitioner did not file a brief herein. Although it is arguable that respondent has abandoned this issue, we do not so hold since evidence relating to it was presented at trial. Cf. Marcus v. Commissioner,22 T.C. 824, 832↩ (1954). Nonetheless, his failure to say one word on the issue in his brief suggests his confidence on this point has dwindled considerably.
5. The regulation before us suggests ways that the official action "may" be manifested, but does not purport to be exclusive. When respondent desires to require that official action be taken only in writing, he has no difficulty clearly stating this in the regulations. E.g., sec. 1.401-1(a)(2), Income Tax Regs. (qualified employee benefit plan must be in writing); sec. 1.408-2(c), Income Tax Regs. (instrument creating an individual retirement account must be in writing); sec. 1.754-1(b)(1), Income Tax Regs. (election to adjust basis of partnership property must be made in writing). See Cobb v. Commissioner,77 T.C. 1096, 1099-1100↩ (1981) (contribution to individual retirement account not deductible where petitioner failed to meet the "written instrument" requirement under the regulations).