Frank T. OLSEN and Lois E.
Olsen, Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellee.

No. 82–1836.

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1983.

Decided June 9, 1983.

Charles E. Craze, Cleveland, Ohio (Gibbs & Craze & Co., L.P.A., Cleveland, Ohio, on brief), for appellants.

John P. Griffin, Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, William S. Estabrook, Tax Div., Dept. of Justice, Washington, D.C., on brief), for appellee.

Before WINTER, Chief Judge, ERVIN, Circuit Judge, and ALDRICH,* Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

Frank Olsen appeals from a decision of the Tax Court upholding a deficiency assessment levied for his failure to pay the self-employment tax on his ministerial income for the years 1976 and 1977. T.C. Mem.Dec. (P–H) ¶ 82,340 (1982). Before us, he contends, as he did before the Tax Court, that the imposition of the self-employment tax on his ministerial income (a) violates his right to free exercise of religion, and (b) violates his right to due process because he was denied a second opportunity to file for an exemption from the tax given to members of certain religious sects under 26 U.S.C. § 1402(g). We find neither argument meritorious and affirm.

## I.

Olsen was ordained as a Baptist minister in May 1968 after graduation from the Bible Baptist Seminary in Arlington, Texas. Since that time he has been employed as a teacher and minister in Baptist churches in New Jersey and North Carolina. He is now minister of the New Testament Baptist Church in Wilmington, North Carolina. He professes a belief that God, the church and the family, and not the state, should support dependent individuals. On religious grounds, he is thus opposed to participation in the social security system, which the self-employment tax goes to support. He contends payment of the tax would conflict with his beliefs, and that it would impede fulfillment of his religious duty to expend his resources to support his family and the faithful. He makes no claim that his beliefs were belatedly acquired. For all that appears, he has held them at least since his ordination.

Congress has provided an exemption from the tax for persons in Olsen's situation. Under Internal Revenue Code § 1402(e), a licensed minister who is opposed, because of religious principles or conscientious beliefs, to the acceptance of public insurance which makes payments in the event of death, disability, etc. may receive an exemption from the tax with respect to income earned as a minister.[1] Olsen did not obtain such an

---

* Honorable Bailey Aldrich, Senior United States Circuit Judge for the First Circuit, sitting by designation.

1. Section 1402(e) states:

(e) Ministers, members of religious orders, and Christian Science practitioners—

(1) Exemption.—Any individual who is (A) a duly ordained, commissioned, or licensed minister of a church or a member of a religious order (other than a member of a religious order who has taken a vow of poverty as a member of such order) or (B) a Christian Science practitioner, upon filing an application (in such form and manner, and with such official, as may be prescribed by regulations made under this chapter) together with a statement that either he is conscientiously opposed to, or because of religious principles he is opposed to, the acceptance (with respect to services performed by him as such minister, member, or practitioner) of any public insurance which makes payments in the event of death, disability, old age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act), shall receive an exemption from the tax imposed by this chapter with respect to services

exemption, however, for he failed to file a timely application. Section 1402(e)(2) requires an application for the exemption to be made not later than the due date of the tax return for the second year in which the taxpayer has $400 or more of self-employment income, at least some of which is from the performance of exempted services. Olsen did not seek an exemption until May 1978, even though the application for the exemption was required under § 1402(e)(2) to be filed on or before the due date of his tax return for the year 1970. On September 5, 1978, the Service denied his application because it was untimely.

On April 23, 1979, the Service made a deficiency assessment of $660.44 for 1976 and $800.27 for 1977 on the basis of Olsen's failure to pay the self-employment tax during those years. On July 19, 1979, Olsen petitioned the Tax Court for redetermination of the deficiencies. The Tax Court entered a decision against him on June 21, 1982, and this appeal followed.

## II.

██ An analysis of Olsen's contention that requiring him to pay the self-employment tax infringes upon his right of free exercise of religion involves two steps. First, it must be determined whether the payment of taxes and the receipt of benefits interferes with the free exercise of Olsen's religion. Second, if it is concluded that interference results, the inquiry must be made as to whether payment of the tax is essential to accomplish an overriding governmental interest. *See United States v. Lee*, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982); *Thomas v. Review Bd. of Indiana Employment Sec.*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). As these cases demonstrate, the latter inquiry is important because "[n]ot all burdens on religion are unconstitutional . . . [and] . . . [t]he state may justify a limitation on religious liberty by showing that it is essential to accomplish an overriding governmental interest." *United States v. Lee*, 455 U.S. at 257, 102 S.Ct. at 1055.

There is nothing in the record to challenge the sincerity of Olsen's preferred religious beliefs; and we do not feel impelled to inquire further, because "[c]ourts are not arbiters of scriptural interpretation." *Thomas v. Review Bd. of Indiana Employment Sec.*, 450 U.S. at 716, 101 S.Ct. at 1431. Therefore, we accept as a fact that his objection to social insurance is religious in nature and deeply held. We consider later the extent of the burden on Olsen's free exercise of his religion, but we conclude that there is at least some interference.

*United States v. Lee, supra*, largely controls the answer to our second inquiry. There the Supreme Court upheld the imposition of the social security tax upon an Amish employer who had refused to file returns, to withhold the tax from his employees or to pay the employer's share of the tax because of his religious opposition to social insurance. The Court assumed, as

performed by him as such minister, member, or practitioner. Notwithstanding the preceding sentence, an exemption may not be granted to an individual under this subsection if he had filed an effective waiver certificate under this section as it was in effect before its amendment in 1967.

(2) Time for filing application.—Any individual who desires to file an application pursuant to paragraph (2) must file such application on or before whichever of the following dates is later: (A) the due date of the return (including any extension thereof) for the second taxable year for which he has net earnings from self-employment (computed without regard to subsections (c)(4) and (c)(5)) of $400 or more, any part of which

was derived from the performance of service described in subsection (c)(4) or (c)(5); or (B) the due date of the return (including any extension thereof) for his second taxable year ending after 1967.

(3) Effective date of exemption.—An exemption received by an individual pursuant to this subsection shall be effective for the first taxable year for which he has net earnings from self-employment (computed without regard to subsections (c)(4) and (c)(5)) of $400 or more, any part of which was derived from the performance of service described in subsection (c)(4) or (c)(5), and for all succeeding taxable years. An exemption received pursuant to this subsection shall be irrevocable.

we have concluded in this case, that payment of the tax would transgress the taxpayer's sincerely held religious beliefs. Nonetheless it sustained the constitutionality of application of the tax, since "the Government's interest in assuring mandatory and continuous participation in and contribution to the social security system is very high." (footnote eliminated) 455 U.S. at 259–60, 102 S.Ct. at 1056. To accommodate Lee's religious beliefs by exempting him from the tax, the Court reasoned, would undermine the fiscal integrity of the social security system. The Court's conclusion was that "[b]ecause the broad public interest in maintaining a sound tax system is of such a high order, religious belief in conflict with the payment of taxes affords no basis for resisting the tax." *Id.* at 260, 102 S.Ct. at 1056.

Olsen's case for an exemption from the tax is perhaps more compelling than that presented in *Lee.* The fact that Congress has authorized an exemption from the self-employment tax for a clergyman who files a timely application is some evidence that the burden of allowing a religious exemption to the tax is not prohibitive. Moreover, in *Lee* the tax at issue was the social security tax imposed on employers, for which no exemption is provided by Congress. It would, of course, be more difficult to allow employers an exemption from the social security tax than to allow one to self-employed individuals, because the grant of an exemption to an employer implicates the interests of his employees, who might not share their employer's religious views.[2]

Despite these differences, we conclude that here, too, there is sufficient justification for imposition of the tax. First, much as in *Lee,* allowance of an exemption would undermine to some extent the financial stability of the social security system. It is true, as Justice Stevens noted in a concurring opinion in *Lee,* that the cost to the system of exempting those with religious objections from the tax would ultimately be offset by the withholding of benefits from them. 455 U.S. at 262, 102 S.Ct. at 1057. It is true also that, by permitting an exemption for which timely application is made, Congress has determined that the financial threat to the system is supportable.[3] However, it is equally true that the system operates on current income, so that the reduction of future expenses would not ameliorate the immediate injury of decreased revenues. Nor would it be possible to limit in number the class of persons who might potentially claim the exemption or the scope of the exemption. If we hold that ministers have a constitutional right to opt out of the social security system when participation conflicts with their religious beliefs, that same right should extend as well to persons with secular employment and to other taxes, since their right freely to exercise their religion is no less than that of ministers.[4]

■ Finally, Olsen's only religious interest directly implicated by the tax is his

2. In *Lee* the Court alluded to the danger of an employer imposing his religious beliefs on his employees as reason for not allowing persons in Lee's situation an exemption. 455 U.S. at 261, 102 S.Ct. at 1057. Also, because of the need to protect employees' interests, it would be difficult to administer an employer exemption.

3. The fact that an exemption is available if requested timely really converts this case into a case of alleged denial of equal protection more than a case of denial of the right to free exercise of religion. Because Olsen made no showing that his views were formulated, or came into existence, after the date on which he could have last claimed the exemption, we are not required to decide the more difficult question that those facts may present.

4. In *Lee* the Supreme Court stated that the social security tax was not fundamentally different from general taxes even though its revenues were segregated and used for a specific purpose. It stated:

There is no principled way, however, for purposes of this case, to distinguish between general taxes and those imposed under the Social Security Act. If, for example, a religious adherent believes war is a sin, and if a certain percentage of the federal budget can be identified as devoted to war-related activities, such individuals would have a similarly valid claim to be exempt from paying that percentage of the income tax.

455 U.S. at 260, 102 S.Ct. at 1056.

concern over the use to which his taxes will be put. His desire not to participate in the system by receiving benefits can easily be satisfied by his waiver of benefits or by his gift of them to his church. *United States v. Lee,* 455 U.S. at 261, n. 12, 102 S.Ct. at 1057, n. 12. Taxpayers generally are not permitted to avoid payment of a tax when their objections concern the manner in which government revenues are expended. *See e.g., Lull v. Commissioner,* 602 F.2d 1166 (4 Cir.1979), *cert. denied,* 444 U.S. 1014, 100 S.Ct. 664, 62 L.Ed.2d 643 (1980); *First v. Commissioner,* 547 F.2d 45 (7 Cir.1976); *United States v. Malinowski,* 472 F.2d 850 (3 Cir.), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973); *Autenrieth v. Cullen,* 418 F.2d 586 (9 Cir.1969), *cert. denied,* 397 U.S. 1036, 90 S.Ct. 1353, 25 L.Ed.2d 647 (1970); *Crowe v. Commissioner,* 396 F.2d 766 (8 Cir.1968); *Russell v. Commissioner,* 60 T.C. 942 (1973). In *Lull,* for example, we adopted a Tax Court decision holding that a taxpayer could not refuse to pay that portion of his income tax equivalent to the percentage of government revenues spent on the military even though he had moral and religious objections to paying taxes for military purposes.

■ We therefore hold that the interference with Olsen's free exercise of his religion is justified by the government's need both for revenues to support current social security benefits and its need for administrative certainty in determining who are members of the system both for determining revenues and benefits.

### III.

The second contention raised by Olsen is that he has been denied due process by the arbitrary denial of a second opportunity to apply for an exemption given to members of certain religious sects by § 1402(g). The § 1402(g) exemption is available to *members* of religious organizations, which in principle and practice support dependent individuals, who by reason of such membership, are conscientiously opposed to social insurance. It applies to all self-employment income from whatever source derived. The § 1402(e) exemption, however, is available only to *ministers,* members of religious orders and Christian Scientist practitioners, who have an individual conscientious objection, irrespective of the tenets of their religious faith, and further it applies only to self-employment income from religious activities.

The application for a § 1402(e) exemption must be made not later than the due date of the tax return for the second year in which the taxpayer has $400 or more of self-employment income, at least part of which is for covered services. The application for a § 1402(g) exemption must be made during the first year in which the taxpayer has self-employment income or within three months after the Secretary notifies him of his eligibility and failure to apply.[5] It is the latter provision which,

---

5. Section 1402(g) states:
(g) Members of certain religious faiths.—
(1) Exemption.—Any individual may file an application (in such form and manner, and with such official, as may be prescribed by regulations under this chapter) for an exemption from the tax imposed by this chapter if he is a member of a recognized religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he is conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act). Such exemption may be granted only if the application contains or is accompanied by—
(A) such evidence of such individual's membership in, and adherence to the tenets or teachings of, the sect or division thereof as the Secretary may require for purposes of determining such individual's compliance with the preceding sentence, and
(B) his waiver of all benefits and other payments under titles II and XVIII of the Social Security Act on the basis of his wages and self-employment income as well as all such benefits and other payments to him on the basis of the wages and self-employment income of any other person, and only if the Secretary of Health, Education, and Welfare finds that—

Olsen contends, provides members of certain sects a second chance to apply which he has been denied.

Olsen's argument invokes the equal protection component of the due process clause. He contends that the government must show some compelling reason for the distinction since it trenches on religious beliefs. We disagree. Heightened scrutiny is applied to an equal protection challenge to a regulation which applies selectively to religious activity only if the plaintiff can show the basis for the distinction was religious and not secular in nature. *Gillette v. United States,* 401 U.S. 437, 452, 91 S.Ct. 828, 837, 28 L.Ed.2d 168 (1971). If the justification for the distinction is secular, it need only be rational. *See Ward v. Commissioner,* 608 F.2d 599 (5 Cir.1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 272 (1980); *Jaggard v. Commissioner,* 582 F.2d 1189 (8 Cir.1978), *cert. denied,* 440 U.S. 913, 99 S.Ct. 1228, 59 L.Ed.2d 462 (1979) (both upholding limitation of § 1402(g) exception to members of supportive sects).

The "second chance" provision objected to by Olsen was added to § 1402(g) by the Tax Reform Act of 1976. Pub.L. 94–455, § 1901(a)(155)(A). As originally enacted in 1965, § 1402(g) (then § 1402(h)) required that the exemption be applied for in the first year in which an individual had self employment income. Pub.L. 89–97, § 319(c). Olsen has given us no reason to believe that Congress's motive for adding this clause in 1976 to § 1402(g) but not § 1402(e) was to favor or penalize particular religious groups. Moreover, there is a secular basis for the distinction. Once a member of a sect qualifies under § 1402(g) by proving that it is a tenet of the faith to which he adheres to be opposed to the acceptance of private or public social insurance benefits, the Secretary is put on notice that other members may well also qualify because of that affiliation. Section 1402(g) now permits him to notify those individuals and require that they decide within a three-month period whether they wish an exemption. Thus, the Secretary is authorized to stabilize the benefit roles to serve the administrative need for the certainty of contributors and certainty of potential beneficiaries.

By contrast, the § 1402(e) exemption, concerns only the beliefs and practices of a particular individual, so that the Secretary, despite a need for administrative certainty, possesses no basis on which to notify potential applicants that they might presumptively qualify.

Since Olsen has made no showing of a religious motive for the distinction and since we perceive a rational secular basis for its existence, we hold that the distinction does not violate equal protection of the laws.

AFFIRMED.

---

(C) such sect or division thereof has the established tenets or teachings referred to in the preceding sentence,

(D) it is the practice, and has been for a period of time which he deems to be substantial, for members of such sect or division thereof to make provision for their dependent members which in his judgment is reasonable in view of their general level of living, and

(E) such sect or division thereof has been in existence at all times since December 31, 1950.

An exemption may not be granted to any individual if any benefit or other payment referred to in subparagraph (B) became payable (or, but for section 203 or 222(b) of the Social Security Act, would have become payable) at or before the time of the filing of such waiver.

(2) Time for filing applications.—For purposes of this subsection, an application must be filed on or before the time prescribed for filing the return (including any extension thereof) for the first taxable year for which the individual has self-employment income (determined without regard to this subsection or subsection (c)(6)), except that an application filed after such date but on or before the last day of the third calendar month following the calendar month in which the taxpayer is first notified in writing by the Secretary that a timely application for an exemption from the tax imposed by this chapter has not been filed by him shall be deemed to be filed timely. . . .