Reverend Michael A. WARNKE and Rose M. Warnke, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 85–61.

United States District Court, E.D. Kentucky.

July 17, 1986.

John R. Leathers, Shuffett, Mooney, McCoy, Campbell, Leathers & Newcomer, Lyman E. Wagers, Jr., Lexington, Ky., for plaintiffs.

Marianna J. Read, Asst. U.S. Atty., for defendant; Frederic J. Baker, Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., of counsel.

## MEMORANDUM OPINION

SCOTT REED, District Judge.

This matter is presently before the Court on cross-motions for summary judgment which were heard in open Court on September 24, 1985. The appropriate memoranda have been filed.

A review of the record indicates that this action is appropriate for resolution by summary judgment pursuant to F.R.C.P. 56, since it appears that there are no genuine issues of material fact in dispute. The factual background to this tax refund suit may be briefly summarized as follows.

The plaintiff Reverend Michael A. Warnke is a self-employed evangelistic minister, who preaches the gospel to various groups of people at various places by various means. As a result, his income is derived primarily from individual offerings and royalties from the sale of his religious records and tapes. In 1983, Reverend Warnke and his wife, Rose, filed an amend-

ed joint tax return for the 1980 tax year seeking a refund of $5,529.00. The plaintiffs' federal tax liability for that year was assessed at $20,236.00 on a taxable income of $69,950.00. The refund was sought because the plaintiffs believed that approximately $47,400 should have been excluded from their gross income under the so-called parson's allowance exclusion, 26 U.S.C. § 107 of the Internal Revenue Code. The plaintiffs contend that their tax liability under such a theory would have only been $1,458.41 for 1980.

The amended return reflects that the plaintiffs had only paid $6,987.00 of the total $20,236.00 assessed when they filed their amended return. Consequently, only $5,529.00 was sought at that time. Subsequently, the Service disallowed the plaintiffs' claim on the grounds that Reverend Warnke did not obtain a prior allowance designation from an appropriate employing body as required by 26 C.F.R. § 1.107–1(b). The plaintiffs allege that the balance of the $20,236.00 tax liability plus interest and penalties has since been erroneously "coerced" from them by the Service. Consequently, they filed this action on February 15, 1985, pursuant to 26 U.S.C. § 7422(a).

This case is particularly suited for determination on summary judgment because the resolution of the two primary issues turns on the interpretation of the statutory law. The two primary issues are:

(1) Whether Reverend Warnke, a self-employed minister, qualified for the parson's allowance under 26 U.S.C. § 107(2) in 1980; and

(2) If so, whether the plaintiffs are limited in this action to the amount of the refund sought in their amended return under 26 U.S.C. § 7422(a).

Procedurally it makes sense to begin with the first issue, though the second is of a jurisdictional nature. The resolution of the first may, however, preclude the necessity of reaching the second, and as the Court has jurisdiction at least as to the initial refund, such jurisdiction is sufficient to enable the Court to address the substantive tax question raised by this case.

Initially, it is the plaintiffs' contention that Reverend Warnke complied with all of the provisions of 26 U.S.C. § 107(2), and is therefore entitled to exclude his housing costs from his 1980 gross income. Section 107 provides as follows:

In the case of a minister of the gospel, gross income does not include—

(1) the rental value of a home furnished to him as part of his compensation; or

(2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home.

"Rental allowance" is defined as " ... an amount paid to a minister to rent or otherwise provide a home if such amount is designated as rental allowance pursuant to official action taken ... in advance of such payment by the employing church or other qualified organization." 26 C.F.R. § 1.107–1(b).

As a preliminary matter, it is the finding of this Court that no dispute exists as to whether Reverend Warnke performs the types of duties that could be termed ministerial. The crux of the problem, according to the IRS, is the fact that Reverend Warnke did not obtain a prior designation by an "employing church" or "other qualified organization" in 1980. It is plaintiffs' position that they properly designated that portion of Reverend Warnke's income which constituted his allowance exclusion when they committed themselves to mortgage payments, property taxes, and insurance and maintenance costs on their new home prior to seeking the exclusion. In support the plaintiffs cite *M.L. Libman*, 44 T.C.M. 370, Dec. 39,(161)(M), T.C. Memo 1982–377, wherein the United States Tax Court held that an oral designation by the United Jewish Appeal on behalf of an ordained Jewish rabbi met the designation requirement of Regulation 1.107–1(b). The Warnkes interpret the *Libman* court's holding to state a general policy that § 1.107–1(b) does not require formal designation, which leads then to the conclusion that the monetary commitment of owning a

home constitutes a proper "designation" under § 107. The plaintiffs further contend that as the amount of the exclusion is limited to the greater of (1) the fair rental value of the property if the minister owns his own home, or (2) the amount of funds actually expended, *see* Rev.Rul. 71–280, C.B. 1971–2, p. 92; *Marine v. Commissioner*, 47 T.C. 609 (1967), the amount actually expended for housing in a given year should be deemed a "prior" allocation of a fixed amount of a minister's income.

The Service contends it properly denied Reverend Warnke the parson's allowance exclusion because Reverend Warnke failed to obtain a prior rental allowance designation by "official action" of a qualified organization as required by regulation 1.107–1(b).

■ The Court finds the denial of the allowance exclusion to the Warnkes in 1980 was proper in light of the regulatory requirements established to implement 26 U.S.C. § 107(2). Regulation 1.107–1(b) clearly mandates that an "employing church" or "other qualified organization" designate the portion of a qualifying person's income the organization deems appropriate for the allowance exclusion, as limited by the fair rental value or the amount actually expended by the individual. Consequently, the plaintiffs' argument that a prior designation was properly achieved when they committed themselves to various long-range housing expenses is simply untenable. The designation must be made by a third party under the regulatory scheme. In *Libman, supra,* the court merely held that the designation by a third party need not always be in writing. The court's holding does not purport to allow individuals the privilege of self-designation. For the above reasons, the Court holds the Warnkes did not meet the statutory or regulatory requirements of 26 U.S.C.

§ 107(2) and 26 C.F.R. § 1.107–1(b) in the 1980 tax year.

The plaintiffs contend that the IRS denied Reverend Warnke's exclusion solely because he had no employing church to make the designation for him.[1] Consequently, they argue self-employed ministers such as Reverend Warnke, who are otherwise similarly situated in the class of qualifying ministers, are denied the exclusion due to their mode of religious methodology. This distinction, it is argued, is without reasonable basis and denies Reverend Warnke a benefit given to others who cannot be rationally distinguished from himself. Thus, plaintiffs contend the employing church designation requirement under Treasury Regulation 1.107–1(b) is an unenforceable and unconstitutional regulatory creation of the Commissioner of the IRS.

In response, the defendant contends 26 U.S.C. § 107(2) requires that a separate entity make the rental allowance designation. By enacting Regulation 1.107–1(b) the Commissioner has merely promulgated a regulation which administers the statutory intent.

Initially, the plaintiffs contend that the "employing church" requirement under Treasury Regulation 1.107–1(b) is unenforceable because it is unreasonable and plainly inconsistent with the revenue statute pursuant to which it was promulgated. The plaintiffs also argue that the requirement is unnecessary to enforce the statutory benefit conferred by Section 107.

Prior to 1954, only a minister who was provided with a parsonage was allowed to exempt the "rental value" of the parsonage furnished him as a part of his compensation. *See* I.R.C. of 1921, § 213(b)(1); I.R.C. of 1939 § 22(b)(6); 26 U.S.C. § 107(1). The churches owned or rented such parsonages and consequently no cash flowed to the minister which would create a taxable

---

1. Reverend Warnke's mode of religious practice, it is argued, prevents him from complying with the employing church requirement because he has no affiliation with an organized church. Rather, as evidenced by the plaintiffs' response to the defendant's first set of interrogatories, in 1980 Reverend Warnke conducted ministerial services at 73 different events covering 29 states, 3 Canadian provinces, and New Zealand. These appearances occurred at non-religious public meeting places such as civic centers, auditoriums, fairgrounds and gymnasiums.

event. Those ministers who received additional cash to compensate for the lack of a parsonage were at a disadvantage in that they had to pay tax on the additional income. Section 107(2) was added to alleviate the discriminatory consequences of being a minister who was not furnished a parsonage but was paid a larger taxable salary to provide one for himself.[2]

It is the plaintiffs' position that requiring a prior rental allowance designation by an "employing church" under § 107–1(b) creates a regulatory scheme which fosters discrimination contrary to the acknowledged purpose of Congress as it creates a discriminatory distinction between ministers without an employing church and ministers with an employing church. The plaintiffs contend the "employing church" designation requirement compels a classification of ministers according to whether or not they are employed by an organized church, with those who have an employing church affiliation participating in the statutory benefit and those without such affiliation not participating. Thus, the employing church requirement is unreasonable and inconsistent with Section 107(2) which was created to eliminate discrimination.

In addition, the plaintiffs contend Regulation 1.107–1(b) is unnecessary to enforce or prevent abuse of the allowance exclusion because the exclusion is ultimately limited to the greater of (1) the fair rental value of the property if the minister owns his own home, or (2) the amount of funds actually expended. *Marine v. Commissioner, supra.*

Turning first to the plaintiffs' argument that Regulation 1.107–1(b) is unreasonable and inconsistent with Section 107(2), the Court is of the opinion that this argument is without merit. Initially, the Court notes that the plaintiffs have couched their argument in a way that appears to only consider the employing church as a qualified designator under the regulation. The regulation also provides for designation by a "qualified organization." Consequently, plaintiffs' argument appears more compelling at first glance than perhaps is warranted. Clearly, plaintiffs' objection is that a separate entity other than the minister is required to make the allowance designation pursuant to Regulation 1.107–1(b).

The rules and regulations established by administrative officers to implement the intent of Congress as expressed by the statutory laws are afforded the force of law and must be sustained unless unreasonable and plainly inconsistent with the statute under which they are promulgated. *See CIR v. South Texas,* 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948); *Brooks v. United States,* 473 F.2d 829 (6th Cir.1973); *Koshland v. Helvering,* 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268 (1936). Such regulations should not be overruled except for "weighty reasons." *CIR v. South Texas Co., supra.* In order to determine the validity of a regulation it is necessary to determine whether it is reasonable and consistent with the will of Congress. *Ling v. U.S.,* 200 F.Supp. 282 (D.Minn.1961).

Implicit in the plain language of Section 107(2) is the intent that a minister should be allowed to exclude from his income that part of his compensation that an independent party deems appropriate. The statutory language expressly says, "the rental *allowance paid to him* as part of his compensation." (Emphasis added). This language demonstrates congressional intent that an entity other than the minister is necessary to decide what portion of the

---

**2.** Senate Finance Committee Report, No. 1622, 83rd Congress, p. 16, reveals the congressional intent behind Section 107(2), stating in pertinent part:

Under present law, the rental value of a home furnished a minister of the gospel as part of his salary is not included in his gross income. This is unfair to those ministers who are not furnished a parsonage, but who receive larger sala-

ries (which are taxable) to compensate them for expenses they incur in supplying their own home.

Both the House and your committee has (sic) removed the discrimination in existing law by providing that the present exclusion is to apply to rental allowances paid to ministers to the extent used by them to rent or provide a home.

minister's compensation shall be designated "rental allowance."

In comparing a Section 107(1) minister to a Section 107(2) minister, the independent designation requirement under Regulation 1.107–1(b) cannot be regarded as unreasonable or inconsistent with 26 U.S.C. § 107, for is not a parsonage which is furnished to a minister under Section 107(1) furnished by "designation" of his church? In essence, is it not the church that designates the "rental value" of the parsonage by choosing it in the first place? Indeed, as pointed out by the defendant, to allow a § 107(2) minister to designate his own "rental allowance" would place him in a more favorable position than a minister who is limited to the "rental value" of the home chosen for him by his church. Section 1.107–1(b), consistent with the intended purpose of Section 107(2), eliminates the disparity between Section 107(1) ministers and Section 107(2) ministers.

The independent designation requirement is not only consistent with congressional intent to eliminate disparity between Section 107(1) and (2) ministers but it is also consistent with the intent that the allowance exclusion amount be readily ascertainable.

■ Clearly Congress intended there to be a limit to the amount which could be excluded from a minister's gross income as rental *allowance* (i.e., that which is allowed by a separate entity) under Section 107(2). Regulation 1.107–1(b) has been upheld as an effective administrative method by which to "ascertain" the amount of this limitation. *Ling v. United States, supra; Boyd v. Commissioner,* 81–528, T.C. Memo 1981). In *Ling,* the Court upheld the enforceability of Regulation 1.107–1(b) against a similar argument that it was unreasonable and inconsistent, stating that it gave effect to the statutory intent that the "allowance" be administratively ascertainable. Indeed, in T.C. Memo 81–528, the United States Tax Court deemed the purpose of Regulation 1.107–1(b) was for the "ascertainment of the housing allowance amount." Consequently, the Court does

not find Regulation 1.107–1(b) is unreasonable and inconsistent with, or unnecessary to, the enforcement of the statute under which it was promulgated.

In line with the argument that Regulation 1.107–1(b) is inconsistent with 26 U.S.C. § 107(2), the plaintiffs further contend that the regulation is internally inconsistent as well as inconsistent with other revenue regulations. Again, the Court finds no merit to these arguments.

■ In order to take advantage of the parsonage exclusion the rental value of the parsonage or the "rental allowance" designation must be provided as "remuneration" for one's ministerial services. 26 C.F.R. § 1.107–1(a) defines what constitutes "ministerial" duties in part and also incorporates by reference 26 C.F.R. § 1.1402(c)–5, which provides a more detailed list of activities. Consequently, it appears that the ministerial duties which qualify a minister for the allowance exclusion is very broad, thereby including most practicing ministers. The plaintiffs argue that because Regulation 1.107–1(b) then limits the broad class of qualifying ministers into a subclass of ministers who can obtain a prior designation from an "employing church," Section 1.107–1(b) is inconsistent with Section 1.107–1(a). The Court must disagree.

The ministerial duties listed in Section 1.107–1(a) merely exemplify the types of duties that qualify a minister to be deemed a "minister of the gospel." Being a "minister of the gospel" is just one requirement of 26 U.S.C. § 107(1) and (2). Obtaining a prior rental allowance designation by an independent party is simply another requirement of Section 107(2). Section 107 does not purport to apply to all "ministers of the gospel." What is obviously intended, however, is that one must be a minister of the gospel to be eligible for the exclusion. One must then receive an allowance designation to take advantage of the exclusion under Section 107(2). Regulations 1.107–1(a) and 1.107–1(b) are not inconsistent with each other. Rather, together they implement the statutory benefit conferred by 26 U.S.C. § 107(1) and (2).

The plaintiffs take their argument one step further to contend that Regulation 1.107–1(b) is also inconsistent with 26 C.F.R. § 1.1402(a)–11. Under this regulation, a minister who qualifies for the self-employment tax must include in the computation of his net earnings from self-employment, the rental value of his home or designated rental allowance "irrespective" of whether such rental value or rental allowance was excluded from his gross income under Section 107. Thus, in computation of the self-employment tax payable based upon the net earnings of the self-employed minister, this regulation requires that the Section 107 housing allowance be added back to calculate self-employment net earnings. This is significant to plaintiffs as an acknowledgment that self-employed ministers are intended to qualify for the Section 107 housing allowance exclusion, and yet they cannot qualify for the exclusion under Section 1.107–1(b) because they have no "employing church."

It is clear that a traveling evangelist can qualify for the allowance exclusion by obtaining a prior designation of his earnings from the various host churches he visits. *See Holland,* T.C. Memo 1983–717; Rev. Rul. C.B. 64–326, 1964–2, p. 37. In *Holland,* the U.S. Tax Court held that although Holland was not "assigned to a specific home church" during the taxable years in issue, he could have obtained a prior designation by his "host churches." It is reasonable to assume that without a "specific home church" Holland was "self-employed" during those taxable years. Indeed, a second issue in *Holland* was whether Holland made a timely application to exempt himself from the self-employment tax. Clearly, *Holland* indicates the plaintiffs' argument that Regulation 1.107–1(b) and Regulation 1.1402(a)–11 are somehow inconsistent must fail.

As in *Ling, supra,* the Court does not find Regulation 1.107–1(b) unreasonable or inconsistent with the import of the statutory language found in Section 107. Nor does the Court find the regulation is internally inconsistent or inconsistent with other IRS regulations. Consequently, it is the opinion of the Court that the Commissioner did not exceed his authority in promulgating Treasury Regulation 1.107–1(b).

Finally, the plaintiffs argue that "the employing church" designation requirement in Regulation 1.107–1(b), as applied, constitutes an unconstitutional abridgement of the equal protection component of the fifth amendment and the establishment clause of the first amendment in that the requirement effectively classifies ministers according to their mode of religious practice as a result of granting the housing allowance exclusion to ministers with an "employing church," yet denying it to those without such affiliation.

Generally, the plaintiffs contend that Reverend Warnke's choice not to preach for any given church, which they argue keeps him from meeting the requirements of Regulation 1.107–1(b), "was as much a part of his religious worship as his decision to follow Christianity rather than Islam." Consequently, to deny him the allowance exclusion because he does not have an "employing church" is equivalent to denying him the exclusion because he is Jewish rather than Catholic. This, according to the plaintiffs, creates an unconstitutional distinction between evangelistic ministers and traditional ministers based upon religious methodology which promotes denominational preference in violation of the equal protection and establishment clauses.

The central purpose of the equal protection component of the fifth amendment is to prohibit invidious discrimination between individuals or groups. Fifth Amendment, U.S. Constitution; *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).[3] The central purpose of the establishment clause is to

---

**3.** Though the fifth amendment contains no equal protection clause, the fifth amendment does contain an equal protection component within the due process clause which prohibits the U.S. from invidiously discriminating between individuals or groups. *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

insure government neutrality in matters of religion, which includes neutrality "between religion and religion" and does not allow denominational preference. *Larson v. Valente*, 456 U.S. 228, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982). "This constitutional prohibition of denominational preferences is inextricably connected with the continuing vitality of the free exercise clause." *Larson v. Valente, id.* 456 U.S. at 245, 102 S.Ct. at 1683.

It is well settled that a rule of law that creates a classification affecting or implicating a fundamental right and/or that grants a "denominational preference" is considered "suspect" and is subject to strict judicial scrutiny which requires that the rule "must be invalidated unless it is justified by a compelling government interest and unless it is closely fitted to further that interest." *See Larson v. Valente, id.,* 456 U.S. at 247, 102 S.Ct. at 1685 (citations omitted).[4] In essence, it is the plaintiffs' contention that the "employing church" requirement in Regulation 1.107–1(b) serves no "legitimate" government interest, much less a "compelling" government interest.

In response, the defendant contends that Regulation 1.107–1(b) does not look to the "merits" of any particular religion but is merely an elaboration of the intent of Congress that designation be made by an independent third party. Consequently, the defendant argues that, constitutionally, the regulation is subject only to "limited" judicial review. *See Olsen v. CIR*, 709 F.2d 278 (4th Cir.1983), ("Heightened scrutiny is applied to an equal protection challenge to a regulation which applies selectively to religious activity only if the plaintiff can show the basis for the distinction was religious and not secular in nature.... If the justification for the distinction is secular, it need only be rational."); *Gillette v. United States*, 401 U.S. 437, 91 S.Ct. 828, 28

L.Ed.2d 168 (1971); *Larson v. Valente, supra,* at Note 23. Plaintiffs contend that even though the regulation may be secular on its face, it effectively distinguishes between traditional and non-traditional religions, a result which the Supreme Court has deemed unconstitutional. *Larson v. Valente, id.*

In *Larson,* the Supreme Court struck down a certain provision of a Minnesota statute which allowed religious organizations that received more than fifty per cent of their total contributions from members or affiliated organizations to remain exempt from the registration and disclosure requirements respecting charitable organizations. Previously, all religious organizations had been exempt from the registration requirements, but the act was amended so as to provide that any religious organization that received more than fifty per cent of their charitable contributions from non-members was subject to the registration and disclosure requirements of the original act. The Court determined that the fifty-per-cent rule created a denominational preference in that it effectively limited the religious activities of non-traditional religious organizations. The Court struck the exemption upon a finding that it was not closely fitted to the government's purpose of protecting its citizens from abusive practices in the solicitation of funds for charity.

In response to the appellant's argument that the fifty-per-cent exemption was based on secular criteria that merely had a disparate impact among religious organizations, the Court stated:

> We agree with the Court of Appeals' observation that the provision effectively distinguishes between "well-established churches" that have "achieved strong but not total financial support from their members," on the one hand, and

4. The Court indicated in *Larson* that the three-prong test of *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), indicating governmental neutrality in legislation affecting religion, applies to laws affecting benefits to all religions, and that the strict scrutiny test applies to laws which "discriminate among religions."

*Larson v. Valente, supra,* 456 U.S. at 252, 102 S.Ct. at 1687. The Court went on to say, however, that the *Lemon* test, though unnecessary to resolve the "denominational preference" problem, did reflect the same concerns that warranted the application of strict scrutiny. *Id.* at 252, 102 S.Ct. at 1687.

"churches which are new and lacking in a constituency, or which, as a matter of policy, may favor public solicitation over general reliance on financial support from members," on the other hand. (Citation omitted.)

*Larson v. Valente*, 456 U.S. 228, 246, at Note 23, 102 S.Ct. 1673, 1684 at Note 23. Likewise, the plaintiffs contend the "employing church" requirement of Regulation 1.107–1(b) similarly distinguishes between traditional church-affiliated ministers and non-traditional self-employed evangelist ministers. As such, it should be upheld only upon a finding that the regulation is closely fitted to a compelling government interest.

Initially, the court is of the opinion that this case is distinguishable from *Larson* in that the rule of law in *Larson* clearly distinguished between religious organizations. In *Larson*, religious organizations which received more than fifty per cent of their contributions from non-members had to comply with a burdensome reporting requirement. Those which received more than fifty per cent of their contributions from members did not. Because the former was comprised only of non-traditional religious organizations, the Court held the effect of the regulation was to clearly distinguish between religious organizations. In this case, however, the regulation in question is sufficiently broad so as not to preclude all self-employed ministers from enjoying the parson's exclusion.

It appears that an argument could be made that no distinction exists between evangelists and ministers with "employing churches" under the regulatory scheme as the revenue rulings indicate that a traveling evangelist can qualify for the allowance exclusion by obtaining a prior allowance designation from his host church. *See Holland*, T.C. Memo 1983–717; Rev. Rul. C.B. 64–326, 1964–2, p. 37. More importantly in Reverend Warnke's case, however, is the provision that designation may be accomplished by a "qualified organization." 26 C.F.R. 1.107–1(b).

Regulation 1.107–1(b) does not contain any definition or explanation for the term "qualified organization." The lack of a statutory or regulatory definition for the term suggests the term is to be given meaning on a case-by-case basis. Based upon the limited decisional law, it appears that a qualified organization does not have to be a religiously affiliated entity. *See C.T. Boyd, Jr.*, 42 T.C.M. 1136, T.C. Memo 1981–523; IRS Letter Ruling 8519004, 1/28/85; *Melvin L. Libman*, 44 T.C.M. 370, Dec. 39, 161(M), T.C. Memo 1982–377. Nor must designation necessarily come from the payor of a minister's compensation. *Boyd, supra.*

In *Boyd*, the advance designation requirement was considered to be met by designation of the Church Federation of Greater Indianapolis, Inc., a non-profit corporation, even though Boyd was employed by the Indianapolis Police Department as Senior Chaplain. Having noted that the IRS "reads Regulation 1.107–1(b) very narrowly to require designation by the actual salary payor," the court stated that such a reading was "neither required by the statute nor necessary to fulfill the purpose of the regulation—ascertainment of the housing allowance amount."

In IRS Letter Ruling 8519004, dated January 28, 1985, the Service accepted designation by a non-profit organization which employed a director of pastoral care at a public hospital. And in *Libman*, previously discussed herein, the Tax Court determined not only that a designation by the United Jewish Appeal was sufficient but that oral designation was acceptable.

Clearly, Regulation 1.107–1(b) is broadly applied to include a variety of acceptable qualifying designators who may designate by very informal methods. Thus, it cannot be said the regulation is unreasonably narrow in its application, or that it effectively limits all self-employed ministers who are not affiliated with an "employing church" from participation in the statutory benefit conferred by Section 107(2). Although it may be more difficult for a minister such as Reverend Warnke to comply with the

requirements of Regulation 1.107–1(b), compliance would not require that he totally change his method of religious practice given the inclusive scope of a "qualified organization." Consequently, the Court does not find that Regulation 1.107–1(b) effectively prefers traditional ministers over non-traditional ministers. Having so determined, the Court finds the defendant's contention that Regulation 1.107–1(b) secularly implements that which is merely required by Section 107 particularly compelling.

On its face, Regulation 1.107–1(b) is nonsectarian in nature as it clearly applies to clergy of all faiths. *Salkov v. Comm.*, 46 T.C. 190 (1966); Rev.Rul. 58–221 1958–1 C.B. 53. Additionally, as previously determined, the regulation serves a number of secular purposes.

Section 107(2) was added to equalize the disparate treatment between ministers who were provided a parsonage and those who were compensated more generously to provide one for themselves. Implicitly, Section 107(2) requires a third party to determine the "rental allowance" to be paid to a minister as "part of his compensation." In this regard, the employing church or other qualified organization is necessary to implement Section 107(2). It is also necessary to maintain the equality sought by its enactment, for without an intervening third party Section 107(2) ministers would be put in a better position than Section 107(1) ministers.

As previously determined Treasury Regulation 1.107–1(b) also aids the Commissioner to efficiently administer Section 107. *Ling v. United States*, 200 F.Supp. 282 (D.Minn.1961). The United States Tax Court has expressly held this to be the "purpose" of the regulation. *Boyd*, T.C. Memo 81–528. Arguably, the employing church requirement promotes government disentanglement when one considers the excessive administrative involvement created if a minister could designate his own allowance exclusion. Without independent designation, the fair rental value or the actual amount expended by a minister to provide housing, including utilities, would have to be assessed by the production and inspection of various bills and documents. Such is not the case where the amount is simply designated by an independent party.

■ It is therefore the opinion of the Court that Treasury Regulation 1.107–1(b) does not look to the merits of any particular religion but merely implements and elaborates on the intent of Congress, it being Congress which imposed the requirement that designation be made. As such, any difference between Reverend Warnke and other qualified ministers, if any indeed exists, does not create an unconstitutional distinction and therefore must only have a rational basis in fact. For the above reasons, the Court finds Regulation 1.107–1(b) meets this test.

Certainly the defendant is correct in its assertion that the right to be free from tax or to be permitted to deduct certain expenses from taxable income is generally a matter of legislative grace rather than a constitutional right. *CIR v. Sullivan*, 356 U.S. 27, 78 S.Ct. 512, 2 L.Ed.2d 559 (1958); *Parker v. CIR*, 365 F.2d 792, 795 (1966) ("As long as exemptions are denied by the Commissioner on a non-discriminatory basis using specific and reasonable guidelines and without inquiry into the merits of the particular religious doctrines, the withholding of religious exemptions is permissible under the Constitution.").

For the reasons stated above, it is determined that Regulation 1.107–1(b) is constitutionally valid and enforceable, and since the plaintiffs have failed to obtain a prior designation for the tax year 1980, plaintiffs' claim for tax refund based upon parson's exclusion for that tax year must fail.

In light of the above finding, the Court concludes it is unnecessary to address the second question presented by this case regarding whether the plaintiffs are entitled to maintain this action for an amount in excess of that which they requested in their amended tax return.

In conclusion, after having reviewed the cross-motions for summary judgment and

responses thereto, as well as the parties' supplemental memoranda at least insofar as they pertain to "qualified organizations," and after having heard counsel's motions at a hearing on September 24, 1985, the Court is of the opinion that the defendant is entitled to summary judgment, as a matter of law, pursuant to F.R. C.P. 56.

A separate Judgment and Order in accordance with the Memorandum Opinion shall be entered on the same date herewith.