**Jack M. BALLINGER and Brenda M. Ballinger, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 82–1928.**

United States Court of Appeals,
Tenth Circuit.

March 7, 1984.

Larry Puckett, Oklahoma City, Okl., for appellants.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, William S. Estabrook and Thomas M. Preston, Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellee.

Before McKAY, LOGAN and SEYMOUR, Circuit Judges.

McKAY, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Appellant challenges the United States Tax Court's decision upholding the Internal Revenue Service's (IRS) denial of appellant's application for exemption from tax on self-employment income.

Section 1402(e)(1) of the Internal Revenue Code, 26 U.S.C. § 1402(e)(1) (1976), provides that any individual who is, inter alia,

a duly ordained, licensed or commissioned minister may elect to be exempt from self-employment taxes with respect to earnings derived from services performed as a minister, if he or she is religiously or conscientiously opposed to the acceptance of the described type of public insurance. Section 1402(e)(2) attaches a statute of limitations to obtaining the exemption. An individual seeking an exclusion must file an application on or before the due date of the income tax return for the taxable year for which the applicant has net earnings from self-employment of $400 or more, any part of which was derived from the performance of services as a duly ordained minister.

The appellant was ordained as a minister of the First Missionary Baptist Church, in Missouri, on November 22, 1969. He became minister of the Maranatha Church in Oklahoma City, Oklahoma, in September 1973. During each of the years 1973, 1974 and 1975 he received net earnings from self-employment income, derived from the performance of services as a duly ordained minister, in excess of $400. He paid the appropriate self-employment income tax on such earnings during the years 1973–1975.

On March 8, 1977, appellant filed an "Application for Exemption from Tax on Self-Employment Income and Waiver of Benefits" with the IRS pursuant to former section 1402(h) [now 1402(g)]. He certified that he was a member of the Maranatha Bible Church, Oklahoma City, Oklahoma, and as such followed the church's teachings in opposition to accepting public or private insurance benefits, such as Social Security benefits in the event of death, disability or old-age. This application for exemption was disapproved by the IRS. Appellant does not challenge this denial.

On May 2, 1978, a Certificate of Ordination was issued to appellant by the Maranatha Church, Oklahoma City, Oklahoma. On July 7, 1978, appellant filed an "Application for Exemption from Self-Employment Tax for Use by Ministers, Members of Religious Orders and Christian Science Practitioners", pursuant to section 1402(e). The IRS initially approved the exemption based on the reported ordination date of May 2, 1978. Upon· discovering that appellant had first been ordained in 1969 and an exemption under section 1402(h) had been denied in 1977, the IRS revoked the exemption.

Appellant argues that while he was a minister of the First Missionary Baptist Church of Chambers Park, he did not oppose the acceptance of public insurance but that, in the fall of 1977, as a result of evolving beliefs, he came to be opposed to such insurance. Thus, he argues, the application filed on July 7, 1978, was filed before the due date of the return for the second taxable year for which he had net earnings from self-employment of $400 or more, part of which was derived from the performance of services as a minister opposed to accepting public insurance benefits on the basis of religious principles. He sought to have the Tax Court declare those parts of section 1402(e)(2), which required him to file an application for exemption within a certain time frame, void as being in violation of the first amendment's free exercise of religion clause. Appellant argued that the statute violates the free exercise clause because it is not religiously neutral. Alternatively, he sought to have the time frame measured from the date he became a duly ordained, commissioned, or licensed minister "of a church into which the minister has at any time been ordained in which the minister attains an opposition on conscientious and religious grounds to the acceptance of self-employment tax public insurance." *Ballinger v. Commissioner,* 78 T.C. 752, 756 (1982).

The United States Tax Court, 78 T.C. 752 (1982), upheld the IRS's denial of appellant's exemption, and found appellant liable for self-employment taxes for the years 1976, 1977 and 1978. The court refused to interpret the time requirements of section 1402(e)(2) as allowing the exemption after a second ordination. While we affirm the result reached by the tax court, we cannot accept all of its reasoning.

The statute makes no distinction between a first ordination and subsequent ordinations. Not all churches or religions

have a formally ordained ministry, whether because of the nature of their beliefs, the lack of a denominational structure or a variety of other reasons. Courts are not in a position to determine the merits of various churches nor an individual's conversion from one church to another. *See United States v. Lee,* 455 U.S. 252, 257, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127 (1982); *Thomas v. Review Board of Indiana Employment Security Division,* 450 U.S. 707, 716, 101 S.Ct. 1425, 1431, 67 L.Ed.2d 624 (1981). Thus, we cannot hold that an individual who functions as a minister in a church which does not ordain, license or commission that individual in a traditional or legally formal manner is not entitled to the exemption. Nor can we hold that an individual who has a change of belief accompanied by a change to another faith is not entitled to the exemption. We interpret Congress' language providing an exemption for any individual who is "a duly ordained, commissioned or licensed minister of a church" to mean that the triggering event is the assumption of the duties and functions of a minister.

■ Here, the parties stipulated that in November 1969, appellant was ordained as, and assumed the functions of, the minister of the First Missionary Baptist Church of Chambers Park, Missouri. They further stipulated that in September 1973, appellant became the minister of the Maranatha Church, Oklahoma City, Oklahoma. Although they have not stipulated as to form—whether appellant was *formally* ordained, licensed or commissioned to be the minister of Maranatha Church—the stipulation clearly indicates that he assumed the duties of the minister of the Maranatha Church. In light of this, the issuance of the Certificate of Ordination in May 1978 is irrelevant as far as the statute is concerned. Had appellant filed for an exemption on or before the due date of his tax return for the second taxable year after he assumed the duties as the minister of Maranatha Church in which he had net earnings from self-employment of $400 or more, any part of which was derived from the performance of being the minister of the Maranatha

Church, this would be a different case. However, appellant did not apply for an exemption within this time period.

■ The more difficult question is whether an individual, who has already assumed the duties of a minister, belatedly acquires a belief in opposition to the acceptance of public insurance and that change in belief is not accompanied by a change in faiths, is entitled to the exemption if he files within the statutory time frame after acquiring his new belief. We find that the statute does not provide for an exemption in that situation. The triggering event for measuring the statutory time period is the assumption of ministerial duties, combined with earning a particular amount of income. Thus, the statute does not provide for an exemption where a minister belatedly acquires a belief in opposition to public insurance apart from conversion to another faith. The appellant did not file for the exemption within the applicable time frame.

Appellant challenges the constitutionality of the statute, arguing that it violates the free exercise clause of the first amendment. Appellant contends that the statute is not neutral, in that it discriminates against religions which accommodate evolving beliefs.

■ The government has the power to impose taxes without granting exemptions, exemptions being matters of legislative grace. *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934). Money paid into the social security system is a tax, and such tax is constitutional. *See Helvering v. Davis,* 301 U.S. 619, 646, 57 S.Ct. 904, 911, 81 L.Ed. 1307 (1937). Imposing a tax, based on income, against ministers does not violate the first amendment. *Murdock v. Pennsylvania,* 319 U.S. 105, 112, 63 S.Ct. 870, 874, 87 L.Ed. 1292 (1943). Further, imposition of a tax does not necessarily violate the first amendment even if the individual upon whom the tax is imposed holds religious beliefs forbidding payment of that particular tax. *United States v. Lee,* 455 U.S. 252, 257–58, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127

(1982). We do not understand appellant to challenge that taxes can be assessed against ministers or that if Congress chose to do so it could remove all exemptions, forcing everyone to pay social security taxes. Rather, appellant contends that the exemption provided by Congress is unconstitutional because it does not treat all religions equally—that is, it is not religiously neutral.

An analysis of appellant's contention that forcing him to pay self-employment tax infringes upon his right of free exercise of religion requires a two-part inquiry. First, whether the payment of taxes and the receipt of benefits interferes with the free exercise of appellant's religion; and second, if interference results, whether the payment of the tax is essential to accomplish an overriding governmental interest. *Id.* at 256–60, 102 S.Ct. at 1054–56.

The IRS does not challenge and the record does not reflect any question as to the sincerity of appellant's religious beliefs. We do not feel compelled to inquire further since "[c]ourts are not arbiters of scriptural interpretation." *Thomas v. Review Board of Indiana Employment Section Division,* 450 U.S. 707, 716, 101 S.Ct. 1425, 1431, 67 L.Ed.2d 624 (1981). Therefore, we accept as a fact that his objection to social insurance is religious in nature. Thus, we conclude that there is at least some interference with appellant's free exercise of religion.

Whether the payment of the tax is essential to accomplish an overriding governmental interest is controlled by the Supreme Court's decision in *United States v. Lee,* 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982). There, the Court upheld imposition of the social security tax upon an Amish employer who had refused to file returns, to withhold tax from his employees or to pay the employer's share of the tax because he opposed social security on religious grounds. Even though the tax placed a burden on the employer's free exercise of religion, the Court upheld the tax's application because of the government's overriding interest in maintaining the financial stability of the social security system.

*Olsen v. Commissioner,* 709 F.2d 278 (4th Cir.1983), considered a free exercise clause challenge to section 1402(e) by a minister who filed an untimely application for an exemption. The Fourth Circuit found that the minister's case for an exemption was perhaps more compelling than that in *Lee* because Congress has authorized an exemption for a clergyman who files a timely application, thus evidencing that the burden of allowing a religious exemption to the tax is not prohibitive. However, the court concluded that in spite of the differences between *Lee* and *Olsen,* the *Lee* reasoning provided sufficient justification for imposing the tax on the minister in *Olsen.*

> [M]uch as in *Lee,* allowance of an exemption would undermine to some extent the financial stability of the social security system. It is true, as Justice Stevens noted in a concurring opinion in *Lee,* that the cost to the system of exempting those with religious objections from the tax would ultimately be offset by the withholding of benefits from them. 455 U.S. at 262, 102 S.Ct. at 1057. It is true also that, by permitting an exemption for which timely application is made, Congress has determined that the financial threat to the system is supportable. However, it is equally true that the system operates on current income, so that the reduction of future expenses would not ameliorate the immediate injury of decreased revenues. Nor would it be possible to limit in number the class of persons who might potentially claim the exemption or the scope of the exemption. If we hold that ministers have a constitutional right to opt out of the social security system when participation conflicts with their religious beliefs, that same right should extend as well to persons with secular employment and to other taxes, since their right freely to exercise their religion is no less than that of ministers.[1]

---

1. In *Lee* the Supreme Court stated that the social security tax was not fundamentally dif-

*Id.* at 281 & n. 4 (footnote 1 in original, other footnotes omitted). We agree that in light of *Lee* and these considerations, imposition of the tax does not impermissibly burden appellant's right to freely exercise his religion. Nor is this a case where the appellant must abandon a religious practice or risk criminal sanctions. Appellant is free to decline any public assistance from the social security program. The law imposes only an indirect burden on appellant. *Hatcher v. Commissioner,* 688 F.2d 82 (10th Cir.1979).

 Appellant's argument that the statute is not religiously neutral is essentially more of an allegation that the exemption in section 1402(e) violates the establishment clause of the first amendment. In *Hatcher,* we held that mandatory participation in the social security program does not violate the establishment of religion provision because the statute "has a secular purpose, has a principal or primary effect that neither advances nor inhibits religion, and does not foster excessive government entanglement with religion...." *Id.* at 83. We further held that the exemptions of section 1402(e) and (g) were religiously neutral and not in violation of the establishment clause. Appellant asserts that *Hatcher* does not reach the situation at issue here—*i.e.,* a claim that section 1402(e) discriminates among religions.

In *Gillette v. United States,* 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971), the Supreme Court considered a challenge to section 6(j) of the Military Selective Service Act of 1967. 50 U.S.C.App. § 456(j) (1964 & Supp. V). The petitioner in *Gillette* claimed that section 6(j), providing for exemption from military service based on conscientious objection, construed to cover only objectors to all wars violated the first amendment. Petitioner conscientiously objected only to particular wars. The Court characterized petitioner's complaint as one that the statute "impermissibly discriminate[d] among types of religious belief and affiliation." *Gillette,* 401 U.S. at 449, 91 S.Ct. at 836. The petitioner also asserted that the fifth amendment's due process clause was violated because the distinction embodied in the statute (between objectors to all wars and objectors to particular wars) was arbitrary and capricious and worked an invidious discrimination in contravention of the "equal protection" principles encompassed by the fifth amendment.[2] The Court found that the fifth amendment claim was not an independent argument in the context of conscientious objection cases. The Court went on to say that "the section survives the Establishment Clause because there are neutral, secular reasons to justify the line that Congress has drawn, and it follows as a more general matter that the line is neither arbitrary nor invidious." *Id.* at 449 n. 14, 91 S.Ct. at 836 n. 14.

Having already concluded that the purposes underlying section 1402(e) are neutral, we consider whether there are neutral, secular reasons to justify a two-year time period and whether such period is rational. *See Welch v. Henry,* 305 U.S. 134, 144, 59 S.Ct. 121, 124, 83 L.Ed. 87 (1938). We find that the statute is facially neutral. It permits all ministers who oppose public insurance on religious grounds to qualify and, as we interpret the statute, permits ministers who change churches to qualify. The statute is not tied to any particular church. Nor is the line wholly tied to religious belief. Rather, it is tied to the date of ordination in combination with the amount of income earned by the minister. The amount of income earned is an entirely neutral, secular factor. The government may distinguish between ministers and members, and

---

ferent from general taxes even though its revenues were segregated and used for a specific purpose. It stated:

There is no principled way, however, for purposes of this case, to distinguish between general taxes and those imposed under the Social Security Act. If, for example, a religious adherent believes war is a sin, and if a certain percentage of the federal budget can be identified as devoted to war-related activities, such individuals would have a similarly valid claim to be exempt from paying that percentage of the income tax.

455 U.S. at 260, 102 S.Ct. at 1056.

**2.** *See Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954).

is not required to allow the exemption on a revolving basis. The government has a valid interest in administering and maintaining the financial stability of the social security program. In light of this interest and the fact that the line drawn by Congress is linked with a nonreligious, neutral factor, we find that the line is not arbitrary, but is rationally related to a legitimate government interest.

AFFIRMED.