JAMES B. HALL AND NANCY J. HALL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hall v. Commissioner
Docket No. 16699-91
United States Tax Court
T.C. Memo 1993-360; 1993 Tax Ct. Memo LEXIS 367; 66 T.C.M. (CCH) 374; August 16, 1993, Filed *367 Decision will be entered for respondent. For petitioners: James A. Mundt. [1]
For respondent: Frederick J. Lockhart. PATE
PATE
MEMORANDUM FINDINGS OF FACT AND OPINION PATE, Special Trial Judge: This case was assigned to and heard by Special Trial Judge Joan Seitz Pate pursuant to section 7443(b)(3) and Rules 180, 181, and 182. [2] Respondent determined a deficiency in petitioners' 1988 Federal income taxes of $ 421. The issue for our decision is whether petitioner James B. Hall timely filed an application electing to be exempt from self-employment tax on his ministerial income. FINDINGS OF FACT James B. Hall and Nancy J. Hall filed a joint income tax return for the taxable year 1988. They resided in Colorado *368 Springs, Colorado, at the time they filed their petition. Some of the facts have been stipulated and they are so found. In 1979, James B. Hall (hereinafter petitioner) was ordained as a deacon in the United Methodist Church (hereinafter Methodist Church). From June 1980 until September 1983, he served as a pastor in two different Methodist churches where he gave sermons and performed other religious services such as baptisms, communions, weddings, and funerals. Additionally, he served on various committees and helped to coordinate the activities of both churches. Petitioner earned more than $ 400 per year from his ministry in the Methodist Church and paid self-employment tax thereon. He did not file a Form 4361 (Application for Exemption from Self-Employment Tax for Use by Ministers, Members of Religious Orders and Christian Science Practitioners), even though he was aware of the timeframe for filing such application, because he had no strong convictions with respect to public insurance. As a deacon of the Methodist Church, petitioner was authorized to render his religious services only within the local church. However, after a 2-year probationary period, he was eligible to *369 be elevated to elder status which, if granted, would have enabled him to render religious services worldwide. After serving the requisite 2-year probationary period, petitioner applied for elder status, but his application was denied. Thereafter, he decided to leave the ministry, and he obtained employment as an engineer. He worked as an engineer for 5 years. In 1988, petitioner was again ordained, this time by the Community Church of Southport in Indianapolis, Indiana (hereinafter Community Church). In that same year, he began his ministry with Engineering Ministry International (hereinafter EMI) in Colorado Springs, Colorado, and earned therefrom more than $ 400. On January 9, 1989, petitioner filed a Form 4361, electing to be exempt from self-employment tax. Respondent denied petitioner's application for exemption on the grounds that it was not timely filed. OPINION In general, section 1401 imposes a tax upon self-employment income. However, an individual who performs services as a minister may chose to be exempt from self-employment tax on amounts earned in the performance of services as a duly ordained, commissioned, or licensed minister of a church in the exercise *370 of his ministry. Sec. 1402(e); sec. 1.1402(e)-2A(a)(1), Income Tax Regs. To obtain the exemption, section 1402(e)(3) provides that the individual must file an application: on or before whichever of the following dates is later: (A) the due date of the return (including any extension thereof) for the second taxable year for which he has net earnings from self-employment * * * of $ 400 or more, any part of which was derived from the performance of * * * [ministerial duties]; or (B) the due date of the return (including any extension thereof) for his second taxable year ending after 1967.
Further, under section 1402(e)(1), he must file his application: together with a statement that either he is conscientiously opposed to, or because of religious principles he is opposed to, the acceptance (with respect to services performed by him as such minister, member, or practitioner) of any public insurance which makes payments in the event of death, disability, old age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act) * * *.
To ascertain during what *371 period petitioner could elect to be exempt from self-employment tax, we must first decide whether petitioner performed the services of a minister (within the meaning of section 1402) for the period 1980 through 1983. If we find that petitioner did not, respondent concedes that petitioner's application for exemption was timely filed. If we find that petitioner performed services as a duly ordained minister during 1980 through 1983, then we must decide whether the application for exemption he filed in 1989 was timely. We have examined the evidence showing that petitioner performed services as "a duly ordained, commissioned, or licensed minister" during 1980 through 1983, and conclude that there is no doubt that he did so. During those years, he was an ordained deacon of the Methodist Church and a pastor in two churches of that denomination, in which he performed baptisms, communions, weddings, and funerals, conducted religious services, and served on several church boards. These are the traditional duties and functions of a minister. See, e.g., Knight v. Commissioner, 92 T.C. 199, 202-203 (1989); Wingo v. Commissioner, 89 T.C. 922 (1987); *372 Reeder v. Commissioner, T.C. Memo. 1993-287; see also sec. 1.1402(c)-5(b)(2), Income Tax Regs. Consequently, we find that petitioner performed services as a "duly ordained minister" within the meaning of section 1402(c), starting in 1980, and earned more than $ 400 from his ministry in each of the years 1980 through 1983. If a minister wishes to be exempt from self-employment tax, he is required to file an application for exemption from self-employment tax by the due date of the return for the second taxable year for which he had earnings of $ 400 or more from his ministry. Sec. 1402(e)(3). Since petitioner earned more than $ 400 from his ministerial duties, first in 1980 and again in 1981, the last day on which he could file a timely application would have been April 15, 1982. Since petitioner did not file a Form 4361 until February 9, 1989, his application was untimely. Nevertheless, petitioner claims that in Ballinger v. Commissioner, 728 F.2d 1287 (10th Cir. 1984), affg. 78 T.C. 752 (1982), the United States Court of Appeals for the Tenth Circuit (hereinafter the Court of Appeals) indicated *373 that when a taxpayer has the required net earnings from his ministry and, therefore, the application period has expired, and thereafter he changes his faith and adopts a new belief in opposition to public insurance, such changes may result in a new application period. Therefore, the critical question in this case is whether petitioner may avail himself of the exemption from self-employment tax after he reentered the ministry in 1988. More specifically, we must decide whether petitioner's reentry into the ministry, coupled with his joining a different church and his acceptance of a new belief opposing public insurance, starts anew the time for electing out of the Social Security system. In this regard, respondent questions whether petitioner first acquired an opposition to public insurance upon his entry into the Community Church. We think the evidence clearly shows that he did. When petitioner was a Methodist minister, he harbored no objection to public insurance and, in fact, paid self-employment taxes on his ministerial income. Later, he joined a new church with different beliefs and, as a result, became opposed to public insurance. As petitioner testified, he "would simply *374 like to live by faith" and let the Lord supply his needs. The Court of Appeals' opinion on which petitioner relies was an appeal from our decision in Ballinger v. Commissioner, 78 T.C. 752 (1982), affd. 728 F.2d 1287 (10th Cir. 1984). In that case, we found that the taxpayer (hereinafter Ballinger) had been ordained by the First Missionary Baptist Church in 1969 and served as a minister for that church from 1969 through 1972 (although the opinion is silent as to whether he had any earnings therefrom). In 1973, he switched to the Maranatha Church, and earned more than $ 400 per year from such services in 1973, 1974, and 1975, on which he paid self-employment tax. He became opposed to public insurance in 1977 and was ordained by the Maranatha Church in 1978. Ballinger first filed an application for an exemption from self-employment tax in March of 1977, which respondent denied. After he was ordained by the Maranatha Church in 1978, he filed another application (on July 7, 1978), which respondent also denied. [3] We decided that Ballinger's deadline for filing his application was April 15, 1975, and that, therefore, both *375 the 1977 and 1978 applications were untimely. We reasoned that Ballinger had filed the later application "more than 3 years subsequent to the due date of the tax return for the second taxable year for which he had net earnings from self-employment of $ 400 or more derived from his performance of services as a duly ordained minister." Id. at 757. Ballinger appealed, and the Court of Appeals affirmed our decision. The court agreed with our reasoning that the application period was triggered when the taxpayer assumed the duties and functions of a minister and his ministerial earnings exceeded $ 400, irrespective of the ordination date. Ballinger v. Commissioner, 728 F.2d at 1290. Further, the Court of Appeals observed that the Code does not provide for an exemption *376 where a minister belatedly acquired a belief in opposition to public insurance. Id.
However, at three different points in its opinion, the Court of Appeals briefly discussed whether an application for exemption might be timely if filed within the 2 years of the minister's attaining an opposition to the public insurance system in conjunction with a change in faith. In this connection, the Court of Appeals stated: Nor can we hold that an individual who has a change of belief accompanied by a change to another faith is not entitled to the exemption. * * * [Id.]
* * * Thus, the statute does not provide for an exemption where a minister belatedly acquires a belief in opposition to public insurance apart from conversion to another faith. * * * [Id.] * * * We find that the statute is facially neutral. It permits all ministers who oppose public insurance on religious grounds to qualify and, as we interpret the statute, permits ministers who change churches to qualify. * * * [Id. at 1292.]
However, in affirming our opinion in Ballinger v. Commissioner, supra, none of the points the Court of Appeals brought out in the *377 above quotations were necessary for its holding. Because Ballinger had filed his application late, even when measured from the time he started working for the Maranatha Church, the Court of Appeals did not have to take into account any change of faith in reaching its decision. Consequently, the ambiguous comments quoted above are dicta, not binding on this Court under Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). We consider them so, even though an appeal of this decision would lie with the Court of Appeals for the Tenth Circuit. Section 1402(e)(3) specifically and unambiguously provides guidelines for filing an application for exemption from self-employment taxes on petitioner's ministerial earnings. We have repeatedly held that these time limitations are mandatory and strict compliance is necessary to obtain the exemption. See, e.g., Ballinger v. Commissioner, 728 F.2d at 1289; Olsen v. Commissioner, 709 F.2d 278, 280 (4th Cir. 1983), affg. T.C. Memo. 1982-340; see also sec. 1.1402(e)-3A, Income *378 Tax Regs. In considering petitioner's argument, we have reviewed the language of the statute and the regulations thereunder and cannot find any indication that a change in faith would give rise to a second opportunity to file an application for exemption. Both simply provide that, when a minister wishes to elect out of the social security system, he must do so by filing an application before the due date of the return for the second taxable year for which he has net earnings from his ministerial duties of $ 400 or more. Sec. 1402(e); sec. 1402(e)-3A, Income Tax Regs. Moreover, once an application has been approved, it may not be revoked. Sec. 1402(e)(4); sec. 1.1402(e)-4A(b), Income Tax Regs. These stringent requirements prevent ministers from electing into and out of the Social Security system. [4]
*379 Petitioner performed duties as a minister and earned more than $ 400 from his ministry during 1980 and 1981. Therefore, he had until April 15, 1982, to file his application for exemption. His application was not filed within that allotted time. Although petitioner became opposed to public insurance and changed churches [5] during 1988, the Code does not provide for a new application period under such circumstances. Accordingly, we hold that petitioner did not file a timely application and, hence, is subject to self-employment tax on his ministerial earnings for 1988. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. James A. Mundt entered his appearance on petitioners' behalf after the trial and did not participate in any posttrial proceedings.↩
2. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Actually, respondent first approved the application because some of the matters contained therein had been misstated. Upon learning the facts, respondent then disapproved the application.↩
4. We also do not find any support for petitioner's position in the legislative history of sec. 1402. H. Rept. 544, 90th Cong., 1st Sess. 32, 143-146 (1967); S. Rept. 744, 90th Cong., 1st Sess. 54, 226-229 (1967); see Social Security Amendments Act of 1977, Pub. L. 95-216, sec. 316, 91 Stat. 1509, 1937; Tax Reform Act of 1986, Pub. L. 99-514, sec. 1704, 100 Stat. 2779.↩
5. We make no finding as to whether petitioner changed his faith during 1988.↩