**James B. HALL, Nancy J. Hall, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 93–9027.

United States Court of Appeals, Tenth Circuit.

July 19, 1994.

Garth J. Nicholls of Warren, Mundt & Martin, Colorado Springs, CO, for petitioners-appellants.

Loretta C. Argrett, Asst. Atty. Gen., Bruce R. Ellisen and Sara Ann Ketchum, Attys., Tax Div., U.S. Dept. of Justice, Washington, DC, for respondent-appellee.

Before LOGAN, SETH and BARRETT, Circuit Judges.

LOGAN, Circuit Judge.

■ Petitioners James B. Hall (hereinafter "taxpayer") and Nancy J. Hall[1] appeal the Tax Court's decision that taxpayer's application as a minister for an exemption from self-employment tax pursuant to Internal Revenue Code (I.R.C.) § 1402(e), 26 U.S.C. § 1402(e), was untimely. We review the Tax Court's conclusions of law de novo and its findings of fact for clear error. *Resale Mobile Homes, Inc. v. Commissioner*, 965 F.2d 818, 821 (10th Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 212, 121 L.Ed.2d 151 (1992).[2]

Taxpayer was ordained as a deacon in the United Methodist Church in 1979, and from June 1980 until September 1983 he served as

1. Nancy Hall is a party to this suit having filed a joint income tax return with her husband, James B. Hall, in the relevant taxable year, but the disputed deficiency and exemption arise solely from her husband's employment and income as a minister.

2. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

a pastor delivering sermons and performing baptisms, communions, weddings, and funerals. Taxpayer earned more than $400 per year from his ministerial services in both 1980 and 1981, and he paid self-employment tax on that income. Taxpayer's activities as a deacon made him potentially eligible to apply for a § 1402(e) exemption.

I.R.C. § 1402(e)(1) allows "any individual who is [ ] a duly ordained, commissioned, or licensed minister of a church" to apply for exemption from self-employment tax on amounts earned in the performance of services in the exercise of his ministry. The individual's application for exemption must include

> a statement that either he is conscientiously opposed to, or because of religious principles he is opposed to, the acceptance (with respect to services performed by him as such minister, member, or practitioner) of any public insurance which makes payments in the event of death, disability, old age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act).

I.R.C. § 1402(e)(1).

Because he received income in excess of $400 for his ministerial services in both 1980 and 1981, taxpayer was required by the provisions of § 1402(e)(3) to apply for an exemption no later than April 15, 1982. The application is due

> on or before whichever of the following dates is later: (A) the due date of the return (including any extension thereof) for the second taxable year for which he has net earnings from self-employment [income] of $400 or more, any part of which was derived from the performance of [ministerial duties]; or (B) the due date of the return ... for his second taxable year ending after 1967.

*Id.* § 1402(e)(3). At that time, however, the taxpayer was not religiously or conscientiously opposed to the acceptance of public insurance, and apparently the Methodist Church had no policy opposing the acceptance of such insurance by its deacons. Thus, taxpay-

er was not eligible and did not apply for an exemption.

After serving as a deacon for the requisite probationary period, taxpayer applied for elevation to elder status within the Methodist Church, which would have made him eligible to perform ministerial duties outside of his local church. His application for elder status was denied and he left the ministry, obtaining employment as an engineer.

Five years later, taxpayer was ordained by the Community Church and began a new ministry with Engineering Ministry International. Taxpayer earned in excess of $400 from his services during the first year of his new ministry, and he applied for an exemption from self-employment tax in January preceding the tax deadline in April. The application was denied as untimely, on the basis that the application should have been filed no later than April 15, 1982. The Tax Court affirmed this denial, indicating that the Code's plain language did not make any provision for a second application period following a second ordination. *Hall v. Commissioner,* 66 T.C.M. (CCH) 374, 1993 WL 308139 (1993).

█ The question before us is whether taxpayer's return to the ministry after a five-year absence, combined with his ordination in a new church and his acceptance of a new belief in opposition to public insurance, provides an opportunity to opt out of the social security system. The respondent Commissioner of Internal Revenue argues that the Tax Court's decision should be affirmed because its narrow construction of the § 1402(e) exemption is consistent with the plain language and legislative history and carries out the congressional policy of strictly limiting any exemption from the tax liability associated with full participation in the social security system.

We anticipated a case like this when we decided *Ballinger v. Commissioner,* 728 F.2d 1287 (10th Cir.1984). There we affirmed the denial of a § 1402(e) exemption to a minister who was initially ordained in the Baptist Church in 1969. Although his earnings made him eligible, he did not apply for an exemption from the self-employment tax. Four years later he began serving as minister in

the Maranatha Church, and he continued to pay self-employment tax on his income derived from ministerial services for several years thereafter. The minister was not formally ordained in the Maranatha Church until 1978, although by that time he had been performing a wide range of ministerial service in that church for five years. He applied in 1978 for exemption from the self-employment tax on the grounds that his religious beliefs had evolved and that he had begun opposing public insurance in the fall of 1977. The Tax Court affirmed the denial of that exemption.

Reviewing the Tax Court, we concluded that the triggering event for claiming a § 1402(e) exemption is the assumption of the duties and functions of a minister, not necessarily the actual ordination date. *Ballinger*, 728 F.2d at 1290. Therefore, the minister, who waited for five years after beginning his ministry in a new church before filing an application, was properly denied an exemption. That set of circumstances, of course, is clearly distinguishable from this case in which the minister applied for exemption in the first tax year immediately following his second ordination and the commencement of his new ministry.

Nevertheless, in *Ballinger* we declined to follow the Tax Court's reasoning, which interpreted the time requirements of § 1402(e)(2) as not allowing an exemption after a second ordination. We said that we could not "hold that an individual who has a change of belief accompanied by a change to another faith is not entitled to the exemption." 728 F.2d at 1290. We ultimately concluded that the statute "permits all ministers who oppose public insurance on religious grounds to qualify and, as we interpret the statute, permits ministers who change churches to qualify." *Id.* at 1292. The Tax Court in the instant case cited these pronouncements in *Ballinger* as nonbinding dicta. However, we consider *Ballinger*'s reasoning, if not its core holding, as controlling this panel's decision and compelling a reversal.

We are not inclined to make a constricted distinction of *Ballinger* or to call for in banc consideration of this issue. We recognize that tax exemptions are to be construed narrowly, *see Commissioner v. Jacobson*, 336 U.S. 28, 49, 69 S.Ct. 358, 369, 93 L.Ed. 477 (1949); but it is also "settled policy [in matters of statutory construction] to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question." *Gomez v. United States*, 490 U.S. 858, 864, 109 S.Ct. 2237, 2241, 104 L.Ed.2d 923 (1989) (citations omitted). Without performing a detailed analysis, we express concern that the Tax Court's interpretation of § 1402(e) could arbitrarily and unconstitutionally interfere with the adherence to sincere religious beliefs by individuals, such as the taxpayer in this case, who undergo a genuine religious conversion, are ordained in a second church, and act within the defined statutory period to exempt themselves from tax on their self-employment income.[3] We believe that the language of § 1402(e) is subject to a reasonable interpre-

---

**3.** Indeed, at one time, the IRS expressed similar misgivings in a general counsel memorandum concluding that "[t]he clear purpose of section 1402(e) ... is to allow ministers who are opposed to the acceptance of public insurance because of religious principles ... to be exempt from self-employment tax, provided that the minister claims exemption within the prescribed period." Gen.Couns.Mem. 38,210 (December 19, 1979). It stated that the purposes of the statute are served "by allowing a minister who is ordained by a second church and who previously was not conscientiously opposed to the acceptance of public insurance to qualify for the self-employment tax exemption, by claiming exemption within the prescribed period after the second ordination. Denying exemption in such a situation on the basis that the minister should

have requested exemption when ordained by the first church would be unreasonable because the minister was not opposed then to public insurance and thus did not qualify at that time." *Id.* Four years later, the IRS reversed its opinion on the grounds that the plain language and legislative history of the statute provided no grounds for such a position. *See* Gen.Couns.Mem. 39,042 (October 3, 1983). The new memorandum expressed no concern for burdens on changed religious beliefs, concluding that even if the minister's first church did not oppose public insurance the minister could have filed for exemption based on his personal views. This hard-line "one opportunity to file" position offers no consideration or leeway for legitimate religious conversion and demonstrably changed beliefs.

tation that will neither undermine the purposes of the I.R.C. nor raise questions of unconstitutional burdens and infringements.

The plain language of the statute extends the exemption to "any individual who is [ ] a duly ordained, commissioned, or licensed minister of a church ... upon filing an application ... together with a statement that either he is conscientiously opposed to, or because of religious principles he is opposed to, the acceptance ... of any public insurance." I.R.C. § 1402(e)(1). Taxpayer fits that profile exactly. The Code also requires an applicant for exemption to file on or before "the due date of the return ... for the second taxable year for which he has net earnings from self-employment [from his ministerial services] of $400 or more." I.R.C. § 1402(e)(3). As recited above, taxpayer filed during the first taxable year in which his self-employment income from his new ministry exceeded $400. When an individual enters the ministry anew in a new church, having adopted a new set of beliefs about the propriety of accepting public insurance, it is logical and consistent with the statutory language of § 1402(e) to characterize that individual as a "new" minister for the purposes of seeking an exemption. The plain language does not preclude this sensible reading.

We are not persuaded by the Commissioner's citation to I.R.C. § 1402(e)(4), in his attempt to build a case that application for "exemption from self-employment taxes is a once-in-a-lifetime choice." Appellee's Br. 17. I.R.C. § 1402(e)(4) states that once a minister elects exemption, that exemption is irrevocable. The government has good financial reasons for not letting a person who has once opted out to come back in, perhaps just in time to qualify for benefits. In contrast, it loses nothing (except potential welfare costs) by letting a person who has paid into the system to opt out permanently.

Neither are we persuaded by comparing the taxpayer's circumstance with that of the pre–1967 ministers, who were presumed to be exempt from tax on their self-employment income unless they applied to be covered by the social security system, and currently may not be granted an exemption if they opted into the system under the pre–1967 law. *See* I.R.C. § 1402(e)(1). The restriction imposed by this provision is different from the one that the Tax Court endorses in this case. The ministers in the pre–1967 setting took affirmative, and one would presume considered, steps to elect participation in the social security system. Under current law a minister is automatically included in the social security system, until he or she makes the presumably considered step to opt out. Each requires a conscious choice that once made is irrevocable.

We are not concerned that our decision will open the floodgates for conniving Elmer Gantrys to dupe the Internal Revenue Service and opt out of the social security system without documenting a legitimate religious or conscientious reason to justify their exemption from the self-employment tax. It seems unlikely that individuals will forgo the retirement security represented by the social security system without a sincere religious objection. Ministers who do not switch churches may not belatedly opt out of the system. *Ballinger,* 728 F.2d 1287. Ministers who do switch will still have a limited time frame in which to file for exemption following their assumption of the duties and functions of the new ministry. And once ministers elect exemption, that exemption is irrevocable. I.R.C. § 1402(e)(4).

REVERSED and REMANDED.