T.C. Summary Opinion 2008-6


UNITED STATES TAX COURT



DAVID AND GAIL VIGIL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8658-06S.                    Filed January 9, 2008.


David and Gail Vigil, pro se.

<u>Valerie L. Makarewicz</u>, for respondent.



PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal

Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $12,118 deficiency in petitioners' 2001 Federal income tax, a $3,029.50 addition to tax pursuant to section 6651(a)(1) for failing to file a timely 2001 tax return, and a $2,423.60 accuracy-related penalty pursuant to section 6662.

The issues for decision are: (1) Whether petitioners are liable for self-employment tax on income petitioner David Vigil (Mr. Vigil) earned as a minister in 2001; (2) whether petitioners are entitled to certain claimed deductions on Schedule C, Profit or Loss From Business; (3) whether petitioners are liable for the failure-to-file addition to tax under section 6651(a)(1); and (4) whether petitioners are liable for the accuracy-related penalty under section 6662.

## Background

The parties stipulated some of the facts, and they are so found. We incorporate the stipulation of facts and the attached exhibits herein by this reference. Petitioners resided in Norwalk, California, when they filed the petition.

On January 1, 1979, the Independent Pentecostal Church granted Mr. Vigil a license as a minister. Mr. Vigil's primary calling has been to minister on Indian reservations. During 1979, Mr. Vigil worked part time as a minister and also had a

full-time job.  He became a full-time minister in 1980 and continued his full-time ministry throughout the year at issue. In 2001, petitioner Gail Vigil (Mrs. Vigil) was a homemaker.

Since 1987, petitioners have claimed they are exempt from self-employment taxes on income from Mr. Vigil's work as a minister, pursuant to section 1402(e).

In 1996, apparently during the examination of petitioners' 1994 joint tax return, Mr. Vigil wrote a letter to the Internal Revenue Service (IRS).  Mr. Vigil stated that in 1987 he had filed a Form 4361, Application for Exemption From Self-Employment Tax for Use by Ministers, Members of Religious Orders and Christian Science Practitioners, and that a copy of the approved Form 4361 had been returned to him.  Mr. Vigil requested that another copy of the approved application be sent to him and enclosed a copy of the signed (but unapproved) Form 4361 he contends he filed in 1987.  The IRS received his request and the enclosed copy of the unapproved Form 4361 in May 1996.  The IRS searched its document and computer files but did not find any record that Mr. Vigil had been approved for a ministerial exemption or any record that Mr. Vigil had filed a request for a ministerial exemption before 1996.  The IRS requested that the Social Security Administration (SSA) search its records and learned that the SSA did not have any record of either the

approval or the receipt of a Form 4361 from Mr. Vigil. The IRS notified Mr. Vigil of the results of its search on June 11, 1996.

In June 1997, respondent notified petitioners that he proposed an adjustment to their 1994 Federal income tax resulting from nonpayment of self-employment tax, together with a negligence penalty. However, in July 1997, respondent sent petitioners a letter stating that the 1994 examination resulted in no change to the tax that petitioners reported.

Petitioners filed their joint 2001 Federal income tax return on February 27, 2004, together with a request for an extension of time to file their 2001 return (extending the due date from April 15, 2002, to October 15, 2002). Petitioners signed both the 2001 Form 1040, U.S. Individual Income Tax Return, and the Form 2688, Application for Additional Extension of Time To File U.S. Individual Income Tax Return, on February 25, 2004.

Respondent determined a $12,118 deficiency in petitioners' 2001 income tax. Upon examination, respondent disallowed the following amounts claimed as deductions on Mr. Vigil's Schedule C: $3,463 for meals and entertainment expenses; $12,347 for travel expenses; $7,862 for supplies; and $17,199 for car and truck expenses. Respondent determined that Mr. Vigil was not exempt from self-employment tax under section 1402(e) and that petitioners were liable for both an addition to tax under section 6651(a)(1) for failing to file their 2001 tax return on time and

an accuracy-related penalty under section 6662.  Respondent issued a statutory notice of deficiency to petitioners for the 2001 taxable year on February 10, 2006, and petitioners timely petitioned this Court for redetermination of respondent's determinations.

## Discussion

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that these determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners have neither alleged that section 7491(a) applies nor established their compliance with the requirements of section 7491(a)(2)(A) and (B) to substantiate items, maintain records, and cooperate fully with respondent's reasonable requests. Petitioners therefore bear the burden of proof.

With respect to the section 6651(a)(1) addition to tax and the section 6662 accuracy-related penalty, pursuant to section 7491(c), the Commissioner bears the burden of production.  To meet this burden, the Commissioner must produce sufficient evidence showing that the imposition of the addition to tax and the penalty is appropriate in a particular case.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Once the Commissioner meets this burden, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Rule 142(a); Higbee v. Commissioner, supra at 447. As a defense to the addition to tax, the taxpayer bears the burden of proof regarding reasonable cause and lack of willful neglect. Sec. 6651(a). To the extent that the taxpayer shows there was reasonable cause for an underpayment and that he acted in good faith, section 6664(c)(1) prohibits the imposition of an accuracy-related penalty.

A.   Exemption From Self-Employment Tax

Section 1401 imposes a tax on an individual's self-employment income, based on the "net earnings from self-employment" derived by an individual during the taxable year. Sec. 1402(b). Net earnings from self-employment are the gross income derived by the individual from any trade or business carried on by that individual less the deductions attributable to that trade or business. Sec. 1402(a). Section 1402(c)(4) and the final sentence of section 1402(c), however, provide that the term "trade or business" does not include "the performance of service by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry" if an exemption under section 1402(e) is in effect.

Section 1402(e) provides specific requirements for a minister to obtain an exemption from self-employment tax. A

minister seeking the exemption must file an application stating that he is opposed, because of religious principles or conscientious beliefs, to the acceptance of certain types of public insurance, such as that provided by the Social Security Act, attributable to his services as a minister. Sec. 1402(e)(1). This application must be filed within the specific time limits set forth in section 1402(e)(3). Once properly obtained, the exemption from self-employment tax is irrevocable and remains effective for all succeeding taxable years. Sec. 1402(e)(4).

Section 1402(e)(3) provides that the application for exemption must be filed on or before the later of the following dates: (1) The due date of the return (including any extensions) for the second taxable year for which the taxpayer has net earnings from self-employment of $400 or more, any part of which was derived from the performance of services as a minister, or (2) the due date of the return (including any extensions) for his second taxable year ending after 1967. Sec. 1402(e)(3); sec. 1.1402(e)-3A(a)(1), Income Tax Regs. This Court has consistently held that the time limitations imposed by section 1402(e)(3) are mandatory and taxpayers must strictly comply with them. Wingo v. Commissioner, 89 T.C. 922, 930 (1987); Ballinger v. Commissioner, 78 T.C. 752, 757 (1982), affd. 728 F.2d 1287 (10th Cir. 1984); Keaton v. Commissioner, T.C. Memo. 1993-365.

Petitioners bear the burden of proving that because Mr. Vigil was eligible for the exemption and his Form 4361 was timely filed, respondent's determination is erroneous. See Rule 142(a); Welch v. Helvering, supra.

In response to petitioners' assertion of exemption from self-employment tax with respect to their 2001 tax return, respondent's Ministerial Exemption Unit conducted a search to determine whether Mr. Vigil had previously filed a Form 4361 and whether it had been approved. Upon searching the IRS files, a supervisor of this unit found Mr. Vigil's 1996 letter asserting that he filed Form 4361 in 1987, requesting another copy of the approved Form 4361, and enclosing a copy of the signed but unapproved Form 4361. The supervisor also found the case history sheet that was completed in 1996 when the IRS received Mr. Vigil's letter. The case history sheet documented the search at both the IRS and the SSA for any Form 4361 filed by Mr. Vigil and reflects that the IRS notified petitioners in June 1996 that neither the IRS nor the SSA found any record of a Form 4361 for Mr. Vigil, either approved or denied.[1] The supervisor queried

---

[1] The supervisor described the procedure for processing ministerial exemption applications. Upon receipt, Form 4361 is evaluated to determine whether the applicant meets the eligibility requirements. If so, the IRS sends the taxpayer a declaration statement to sign and return. Finally, the Form 4361, originally filed in triplicate, is approved or denied. The IRS retains copy A for its files, sends copy B to the SSA for retention, and returns copy C, marked approved or denied, to the

(continued...)

the SSA again and received a certification, dated May 3, 2007, that the SSA had no record of Mr. Vigil's submitting a Form 4361. Finally, she testified that the SSA retains such records for 75 years.

Mr. Vigil's testimony regarding when he filed Form 4361 was vague and inconsistent; he was certain it was filed in the 1980s, but he thought it might have been a couple of years after he was licensed. Mr. Vigil signed the Form 4361 on April 7, 1987. The form states that Mr. Vigil was licensed in January 1979. His testimony was confusing on this issue; he stated that he was licensed around 1980, but could not say exactly when. He also testified that he worked part time as a minister in 1979 and full time starting in 1980. The Form 4361 states that the first 2 years in which he had net self-employment earnings in excess of $400, at least some of which came from services as a minister, were 1979 and 1980.

We find that Mr. Vigil was licensed in 1979 and that his first 2 earning years as a minister were 1979 and 1980. We conclude that Mr. Vigil's Form 4361 was due on the due date of his tax return for 1980; i.e., April 15, 1981, with extensions. Mr. Vigil signed the Form 4361 and gave it to their certified public accountant (C.P.A.). However, he has not demonstrated

---

[1](...continued)
taxpayer.

that he submitted a Form 4361 to the IRS before his letter in May of 1996 or that an application for exemption was ever approved.[2]

Because a search of IRS and SSA records by respondent for Mr. Vigil's Form 4361 failed to discover the original form, and since petitioners failed to carry their burden of proving that the form was filed, we find that petitioners did not timely file a request for exemption as required by section 1402(e).

Petitioners claimed that their C.P.A. showed the Form 4361 to the IRS agent examining their 1994 return and that this documentation ultimately resulted in the no-change letter from the IRS for 1994.[3]  Petitioners contend that the decision by the IRS not to change their tax for 1994 proves that the IRS accepted Mr. Vigil's exemption for 1994 and establishes that the

---

[2] At times during the trial, Mr. Vigil intimated that he submitted Form 4361 to the IRS in 1980.  Such a submission would have been timely.  The copy of the only Form 4361 introduced into evidence bears a signature date of "April 7, 198".  The last digit of the year appears to have been cut off in copying.  Mr. Vigil's May 1996 letter provided this copy to the IRS.  In that letter, Mr. Vigil wrote that he had filed the Form 4361 on April 7, 1987.  He testified that the signature date should be April 7, 1987, but he also claimed that he might have submitted the Form 4361 much earlier in the 1980s.  However, the Form 4361 in the record bears a revision date of March 1986.  Since the version of the Form 4361 completed by Mr. Vigil did not exist before 1986, it follows that he could not have timely submitted this form by the due date of his 1981 return, even with extensions, as required by sec. 1402(e)(3).

[3] It is doubtful, however, that petitioners shared with the IRS examiner the June 11, 1996, notice from the IRS stating that both the IRS and the SSA had searched their records but neither could find any record of Mr. Vigil's ever filing Form 4361.

application form was on file at that time and, by implication, was approved.  Petitioners conclude that respondent cannot now deny the exemption.

It appears that petitioners are suggesting an estoppel argument based on their reliance on the no-change decision in 1994.  However, it is well established that each tax year stands on its own.  See Rose v. Commissioner, 55 T.C. 28, 32 (1970).  Furthermore, errors of law in prior years do not estop the Commissioner from correcting those errors in later years.  Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 183 (1957).

In view of the apparent failure of Mr. Vigil to file Form 4361 timely, acquiescence by agents of respondent in accepting his claim of exemption in 1994 was an error of law.  Such a mistake does not prevent correction of the error as to 2001.  Id. at 184.  Section 1402(e) imposes time limitations, and the Commissioner's agents have neither the authority nor the power to grant an exemption not complying with the statute.  Robertson v. Commissioner, T.C. Memo. 1983-32, affd. without published opinion 742 F.2d 1446 (2d Cir. 1983).

We conclude that Mr. Vigil is not exempt because he did not satisfy the requirements of section 1402(e)(1).  Respondent's determination that petitioners are liable for the tax imposed by section 1401 on Mr. Vigil's 2001 self-employment income is sustained.

B.    Business Expense Deductions

Respondent disallowed certain deductions petitioners claimed on Schedule C, specifically:  $3,463 for meals and entertainment expenses; $12,347 for travel expenses; $7,862 for supplies; and $17,199 for car and truck expenses.  Respondent disallowed each of these deductions in full but allowed the remaining $26,403 petitioners claimed as business expenses.

As a general rule, section 162(a) authorizes a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  Taxpayers are required to maintain records sufficient to substantiate each claimed deduction.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.

When a taxpayer adequately establishes that he paid or incurred a deductible expense but does not establish the precise amount, we may in some circumstances estimate the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his own making.  Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930).  We can estimate the amount of the deductible expense only when the taxpayer produces evidence sufficient to establish a rational basis upon which the estimate can be made.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 274(d) supersedes the general rule of Cohan v. Commissioner, supra, and prohibits the Court from estimating the taxpayer's expenses with respect to certain items. Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). Section 274(d) imposes strict substantiation requirements for, inter alia, traveling expenses (including meals) and expenses with respect to listed property. Listed property is defined in section 280F(d)(4) to include computers and passenger automobiles.

To obtain deductions for a listed property, travel, meal, or entertainment expense, a taxpayer must substantiate by adequate records or sufficient evidence to corroborate the taxpayer's own testimony the amount of the expense, the time and place of the use, the business purpose of the use, and, in the case of meals and entertainment, the business relationship to the taxpayer of each person entertained. Sec. 274(d); sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274 requires that expense be recorded at or near the time when the expense is incurred. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

When a taxpayer's records have been lost or destroyed through circumstances beyond his control, he is entitled to substantiate a deduction by reconstruction of his expenditures through other credible evidence. Smith v. Commissioner, T.C.

Memo. 1998-33; see also <u>Malinowski v. Commissioner</u>, 71 T.C. 1120, 1125 (1979).

Petitioners did not introduce any documents and offered only vague testimony regarding these claimed expenses. Many of the claimed travel expenses involved Mr. Vigil's driving in his personal automobile to Indian reservations in various States. He traveled with family; namely, Mrs. Vigil and one or more of their adult children. Petitioners testified that they maintained a list of locations where Mr. Vigil ministered and of the mileage driven and that they used credit cards for business expenses and kept the receipts. They further explained that, at the time the 2001 return was prepared in 2004, they provided those documents to their C.P.A. but did not retain copies.

Petitioners' C.P.A. at the time of the preparation of the Form 4361 and the audit of their 1994 tax return developed a drug problem and later died. Their C.P.A.'s wife took over the accounting business and prepared petitioners' 2001 return in 2004. However, petitioners testified credibly that she too has developed a drug habit, that they have been unable to retrieve their documents from her, and that even the sheriff was unable to serve her with a subpoena to appear and testify at trial. Although they tried, petitioners were also unable to retrieve documents from their credit card companies to reconstruct or substantiate their 2001 expenses.

On their Schedule C, petitioners claimed a deduction for parking fees and tolls and for the business use of their personal automobile calculated using the standard mileage rate. In addition to these travel expenses totaling $12,347, petitioners also claimed car and truck expenses of $17,199. Mr. Vigil testified that the car and truck expenses claimed represent his purchase of tires, valves, and three transmissions for their automobile in 2001.[4] Apart from this testimony, petitioners introduced no evidence to support the deductions claimed for mileage, parking fees and tolls, or vehicle repair expenses. Petitioners offered no documents or testimony with respect to the claimed deduction for meals, other than to state that they were responsible for their own meals when teaching and ministering and that they charged the meals to their credit cards.[5]

---

[4] Taxpayers may choose to compute vehicle expenses using either the business standard mileage rate or their actual operating and fixed costs, such as repairs, tires, gasoline, insurance, depreciation, etc. Even with proper substantiation, taxpayers may not deduct both standard mileage and actual expenses. Nash v. Commissioner, 60 T.C. 503, 520 (1973); Rev. Proc. 2000-48, sec. 5.03, 2000-2 C.B. 570, 571.

[5] Mrs. Vigil testified that they have five children, the youngest of whom was 20 in 2001. The children traveled with petitioners when Mr. Vigil ministered away from home, at least until each child married. Because we conclude that petitioners have not adequately substantiated their claimed deduction for meals, we need not, and do not, decide the extent to which the added costs of feeding and traveling with his family are legitimate business expenses for Mr. Vigil as opposed to personal, living, and family expenses rendered not deductible by sec. 262.

Petitioners' testimony with respect to the supplies expenses was vague. Mr. Vigil testified that the supplies consisted of computers, envelopes, paper, and stamps for preparing and sending ministry newsletters. Mrs. Vigil's testimony described her purchase of video equipment and tapes for preparing, editing, and duplicating video tapes for Mr. Vigil's ministry. She claimed that she bought such equipment in 2001 but also testified that she could not remember honestly. This testimony is insufficient to satisfy the strict substantiation requirement of section 274(d) applicable to computers as listed property, and it is inadequate either to reconstruct petitioners' records in support of their $7,862 claimed deduction for supplies or to establish a rational basis upon which the Court can estimate the amount of the deductible expense.

We conclude that petitioners have not satisfied the strict substantiation requirements of section 274(d) to support their claimed deductions for car and truck expenses, travel expenses, or meals and entertainment expenses. Nor have they reconstructed their records or provided evidence sufficient for the Court to estimate the amount of expenses for supplies. Accordingly, respondent's determination that these expenses are not allowable is sustained.

C.   Section 6651(a)(1) Addition to Tax for Failure To File

Petitioners' 2001 Federal income tax return was due on April 15, 2002 (October 15, 2002, if petitioners had timely filed a request for an extension).  The parties stipulated that petitioners filed their 2001 return on February 27, 2004.  Respondent has met his burden of production to show that it is appropriate to impose the addition to tax for petitioners' failure timely to file their 2001 Federal income tax return.

The last sentence of section 6651(a) provides a defense to the addition to tax for failure to file.  The taxpayer must show that the failure was "due to reasonable cause and not due to willful neglect".

Petitioners testified that their C.P.A. regularly requested extensions for their tax returns and that they believed she had successfully obtained approval for them to file late.  Petitioners relied on their C.P.A. to prepare and file their tax returns, and they argue that their reliance was reasonable and should suffice to avoid this addition to tax.

Taxpayers may not avoid the duty of timely filing accurate tax returns by placing responsibility on a tax return preparer.  Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987).  The Supreme Court has provided a very clear, bright line:  "It requires no special training or effort to ascertain a deadline and make sure that it is met.  The failure to make a timely

filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing under § 6651(a)(1)." <u>United States v. Boyle</u>, 469 U.S. 241, 252 (1985).

Respondent's determination that petitioners are liable for the addition to tax for failing timely to file their 2001 Federal income tax return is sustained.

D. <u>Section 6662 Accuracy-Related Penalty</u>

The final issue for decision is whether petitioners are liable for an accuracy-related penalty under section 6662(a) for 2001. Section 6662(a) imposes a penalty equal to 20 percent of any underpayment of tax that is attributable to negligence or disregard of rules or regulations, or a substantial understatement of income tax. See sec. 6662(a) and (b)(1) and (2).

An "understatement" of income tax is defined as the excess of the tax required to be shown on the return over the tax actually shown on the return. Sec. 6662(d)(2)(A). An understatement is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000. Sec. 6662(d)(1)(A).

Whether the accuracy-related penalty is applied because of negligence or disregard of rules or regulations, or a substantial understatement of income tax, section 6664 provides a defense if

a taxpayer establishes that there was reasonable cause for the underpayment and that he acted in good faith with respect to that portion. Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs.; see also Higbee v. Commissioner, 116 T.C. at 448. Although not defined in the Code, "reasonable cause" is viewed in the applicable regulations as the exercise of "ordinary business care and prudence". Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; see United States v. Boyle, supra at 246. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Considering the taxpayer's education, experience, and knowledge, a reasonable misunderstanding of fact or law may indicate reasonable cause and good faith. Higbee v. Commissioner, supra at 449.

Generally, the most important factor is the extent of the taxpayer's effort to assess the proper tax liability, including reliance on the advice of a tax return preparer. However, reliance on a professional adviser, alone, is insufficient; the reliance must be reasonable and the taxpayer must act in good faith. Sec. 1.6664-4(b)(1), Income Tax Regs. Furthermore, a substantial understatement of income tax is reduced by that portion of the understatement attributable to the tax treatment

of any item with respect to which the taxpayer provides adequate disclosure.  Sec. 1.6662-4(a), (e), Income Tax Regs.

The understatement of income tax resulting from the disallowance of petitioners' Schedule C deductions, alone, is $5,546, which is greater than 10 percent of the tax petitioners were required to show on their 2001 return.  Therefore, we conclude that respondent has met his burden of production for his determination of the accuracy-related penalty based on a substantial understatement of income tax pursuant to section 6662(d)(1)(A).

Accordingly, petitioners bear the burden of proving that the accuracy-related penalty should not be imposed with respect to any portion of the underpayment for which they acted with reasonable cause and in good faith.  See sec. 6664(c)(1); Higbee v. Commissioner, supra at 446.

Some of the claimed deductions, such as those for meals for Mr. Vigil's family (absent proof that these expenses had a bona fide business purpose), are likely nondeductible family living expenses.  See sec. 262; sec. 1.162-2(c), Income Tax Regs.  In addition, it should be obvious to any taxpayer exercising ordinary business care and prudence that duplicating automobile expenses (by deducting not only car and truck expenses based on actual costs but also driving expenses calculated using the standard mileage rate) is prohibited.

Petitioners failed to prove that they acted with reasonable cause and in good faith with respect to the disallowed business expense deductions.  We therefore sustain respondent's determination that petitioners are liable for the section 6662 accuracy-related penalty on the underpayment associated with the disallowed Schedule C deductions.

With respect to the tax imposed under section 1401 on Mr. Vigil's self-employment income from his ministry, petitioners relied on the advice of their C.P.A., who told them that Mr. Vigil was exempt.  This reliance was reinforced by the July 1997 letter from the IRS which closed the examination of petitioners' 1994 tax year with no change and from which petitioners logically and reasonably deduced that their Form 4361 must have been approved.  We find that petitioners acted with reasonable cause and in good faith in claiming the exemption in 2001.[6] Accordingly, we conclude that petitioners are not liable for the section 6662 accuracy-related penalty on the underpayment associated with the self-employment tax.

---

[6] The Court notes that the tax returns contained in the record indicate that petitioners consistently entered "Exempt-- Form 4361" on the self-employment tax line of their Form 1040. Because we find that petitioners had reasonable cause and acted in good faith with respect to self-employment tax, we need not, and do not, decide whether this entry constituted "adequate disclosure" pursuant to sec. 1.6662-4(a), Income Tax Regs.

To reflect the foregoing,

Decision will be entered

under Rule 155.